DOKEY *v.* CARPENTER.

1. AUTOMOBILES—PEDESTRIAN'S DUTY TO LOOK—CROSSING STREETS.
Ordinarily a pedestrian crossing a street must look and keep on looking, see what it is plain to see and thus avoid being struck by a car coming in a straight line towards him.

2. NEGLIGENCE—GENERAL RULES.
No general rule as to due care can be stated that will govern all factual situations.

3. AUTOMOBILES—PEDESTRIANS—FOUR-LANE PAVEMENT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR TRIER OF FACTS.
Pedestrian, a 68-year-old night watchman, familiar with traffic conditions on four-lane highway, who was struck from rear by westbound car as he was about to reach the middle of the northerly and outermost of the four lanes of travel after 6 p.m. in the first part of December, was not guilty of contributory negligence as a matter of law where he looked both ways upon entering the pavement and again when he reached the center of the highway and thereafter kept looking to his right but did not see defendant's speeding car which approached him slightly from the rear, downgrade and around a slight curve, as not all reasonable minds would agree that plaintiff's failure to see was a contributing cause of the accident.

Appeal from Kalamazoo; Moll (Lester S.), J., presiding. Submitted January 14, 1942. (Docket No. 62, Calendar No. 41,863.) Decided March 17, 1942. Rehearing denied May 18, 1942.

Case by Edward Dokey against Roy W. Carpenter, for damages for personal injuries sustained when struck by an automobile while crossing a four-lane highway. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

That plaintiff's negligence must have been a substantial factor in bringing about his harm, see 2 Restatement, Torts, § 465. Functions of court and jury on issue of contributory negligence, see 2 Restatement, Torts, §§ 476, 285 and comment d. Factors determining when reasonable man should recognize risk, see 2 Restatement, Torts, § 289.

*Schaberg & Schaberg,* for plaintiff.

*Alexander, McCaslin & Cholette,* for defendant.

BUTZEL, J. Plaintiff brought suit against defendant to recover for injuries sustained through the negligence of the latter's son-in-law while driving the automobile of defendant with his implied consent. The accident occurred on December 8, 1939, at approximately 6:10 p.m. just outside the city limits of the city of Kalamazoo on US-12A, also known as East Michigan avenue. The highway curves and does not run in a straight direction but it does run approximately east and west in the immediate vicinity of the place where the accident occurred. Defendant's driver was proceeding in a westerly direction. The paved portion of the road was divided into four lanes of a width of 10 feet each. The southerly two were used for easterly traffic and the northerly two for that going west. We shall refer to the most northerly lane as the outer lane and the adjoining one abutting the center line as the inner lane. There is no claim that defendant did not remain on the northerly half of the highway, but it is claimed that, while going at the rate of from 50 to 55 miles an hour, he steered his car from the inner to the outer lane where plaintiff was walking, while crossing the road. Plaintiff, 68 years of age, at the time of the accident was a night watchman at the Kalamazoo Paper Company, where he had been employed for 32 years and whose plant was on the south side of the road. He had been in the habit of crossing the highway very frequently both in daytime and at night. He knew the traffic conditions. On the evening of the accident, he started to cross the highway in order to go to a

restaurant located on the north side. The weather was clear and the pavement dry. Plaintiff claims that upon entering the pavement from the south side of the road, he looked in both directions and saw no approaching traffic; that when he reached the center of the road, he again looked and saw nothing; that from that time on he kept looking to the right but saw no approaching car. Notwithstanding this, however, he was struck by the right side of defendant's car while it was speeding in a westerly direction and while turning in from the inner lane to the outer lane. The only damage to the car was to the door handle. Plaintiff's injuries were so serious that they necessitated two skull operations and long hospitalization.

It was shown that defendant's car had a dirty windshield obscuring proper vision and that the car was driven at an unlawful rate of speed under the circumstances. Defendant disclaims liability, particularly on the ground that plaintiff was guilty of contributory negligence. No question is raised as to the size of the $6,000 verdict.

Defendant calls attention to numerous cases involving accidents occurring either in the day or nighttime, and in which we have held plaintiff ordinarily may not recover if he steps into the path of an oncoming car coming in a straight direction. Under ordinary conditions, it is the rule that the pedestrian must look and keep on looking, see what it is plain to see, and thus avoid being struck by a car coming in a straight line towards him. *Haley* v. *Grosse Ile Rapid Transit Co.,* 290 Mich. 373; *Sloan* v. *Ambrose,* 300 Mich. 188. No general rule can be stated, however, that will govern all factual situations. It is true that defendant produced a witness to show that a person standing in the center of the highway at a point nearest the place where the ac-

cident occurred was able to see an object three feet above the pavement, the same height as the lights of a car, from a distance of 480 feet, and of 470 feet from the point where plaintiff was struck. If these were the only facts in the case, the judge undoubtedly would have directed a verdict for defendant. However, plaintiff introduced testimony to show that the road is not a straight one, and plaintiff's vision was obscured because the highway to his right was up a 5-foot grade for 300 feet together with a curve to the north where the highway again sloped down on a curve of 5 feet for 300 feet, so that the light of an approaching car at night reflected upwards and to the rear of plaintiff, whose vision might also have been obscured by a battery of lights from a paper mill a short distance to the east. Plaintiff did state that he could differentiate between automobile lights and those of the paper mill. However, it was shown that plaintiff's mental alertness and his memory were affected by the accident. It was further shown that the testimony that 470 feet was the clear distance that one could see to the east was based upon looking cross-lots, about in line with the mailbox north of the road, rather than down a straight road, and upon observations made in daylight, rather than after dark, when the accident occurred. Westbrook, a witness for plaintiff, testified that he was driving in the same direction as defendant's driver, that he was also driving west on the outer lane of the road and proceeding at the rate of 40 miles an hour, that when he was within 300 feet from the point where the accident occurred, defendant's driver passed him on the inner lane and then steered back into the outer lane where plaintiff had reached a point about 7½ feet from the northerly shoulder of the road, that defendant's driver quickly veered his car to the left after he saw him

but too late for he struck plaintiff with the side of the car. As plaintiff was walking toward the north, the car struck him in the back. Defendant stated that plaintiff when struck was in the middle of the outer lane which would be only 5 feet from the northerly edge.

The testimony on behalf of defendant indicated that the crest of the 5-foot grade of pavement was from 300 to 350 feet east of the point of impact and from such distance on the pavement curved to the north.

The further question arises whether, if plaintiff had looked and seen what it is claimed he should have seen, would he not have been justified in continuing across the road under the circumstances? Did his alleged negligence contribute to the accident? The Westbrook car was 300 feet away at the time defendant's car passed. It must have taken some time and distance for defendant's car to pass the Westbrook car. The query arises whether under the conditions a pedestrian is guilty of contributory negligence when he does not walk into the straight pathway of a car, but the car, instead of going in a straight direction, slants off and goes into the pathway of the pedestrian who has almost crossed the road. Assuming that plaintiff should have seen or did see the Westbrook car when it was 300 feet away, and had also seen defendant's car passing to the left and south of the Westbrook car, we do not believe that reasonable minds would all agree that plaintiff was negligent in believing that he had ample time in which to reach the northern edge of the road. Although defendant's driver would ordinarily have the right to pass another car going in the same direction by going to its left and then returning to the lane nearest the right curb, would not a pedestrian, under the circumstances of this case, have been

justified in believing that the driver of defendant's car would observe such pedestrian, who had almost reached the right curb, and wait until after passing such pedestrian before returning to the right lane? Not all reasonable minds would agree that plaintiff's failure to see was a contributing cause of the accident. Close questions are presented upon which reasonable minds may differ. Therefore, it was properly submitted to the jury.

Judgment affirmed, with costs to plaintiff.

CHANDLER, C. J., and BOYLES, NORTH, STARR, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.