DOUGLAS *v.* HOLCOMB.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.

Testimony and all legitimate inferences therefrom must be viewed in a light most favorable to plaintiff in determining whether denial of defendants' motion for directed verdict was proper.

2. AUTOMOBILES—PEDESTRIANS—OBSERVATION.

A pedestrian before crossing a street or highway must make proper observation as to approaching traffic, observe it and form a judgment as to its distance away and speed, continue his observations while crossing the street and exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances.

3. SAME — T-INTERSECTION — LEFT TURN — PEDESTRIANS — CONTRIBUTORY NEGLIGENCE — OBSERVATION.

Plaintiff, an eastbound pedestrian on crosswalk at south side of 40′ street which terminated at west side of 76–1/2′ street he was crossing, was not guilty of contributory negligence as a matter of law in failing to avoid westbound motorist who was turning south as plaintiff neared center of street in city requiring motorists to yield right-of-way to pedestrians who have started across street, where plaintiff had made observation for approaching traffic before starting across street, continued such observations while crossing and first noticed defendants' car when it was 10 or 15 feet away from him and coming toward him at an angle while making left turn to south at speed of 20 to 25 miles an hour.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 886.
[2, 3] 5 Am Jur, Automobiles §§ 450–452.
[2, 3] Duty of pedestrian crossing street or highway as regards looking for automobiles. 79 ALR 1073.
Duty of pedestrian before crossing street to look for vehicles approaching on intersecting street. 44 ALR 1299.
[4] 5 Am Jur, Automobiles §§ 187, 203.
[5] 5 Am Jur, Automobiles § 293.
[5] Right-of-way at street or highway intersection. 21 ALR 974.

4. SAME—PEDESTRIANS—MOTORIST'S AVOIDANCE OF CONTACT.

> A pedestrian who is in a public street where he has a right to be, can properly assume that the driver of a motor vehicle will not run him down but will avoid contact with him and may also assume that the driver of an approaching machine will give a signal of warning so that an accident may be avoided.

5. SAME—PEDESTRIANS—VIOLATION OF ORDINANCE—YIELDING OF RIGHT-OF-WAY AT INTERSECTION.

> An eastbound pedestrian on south side of street who had made observation of approaching traffic would be entitled to assume, had he noticed westbound motorist after latter had entered T-intersection requiring westbound motorist to turn, that latter would not violate municipal ordinance requiring a motorist to yield right-of-way to a pedestrian within an intersection until it became reasonably apparent that such violation was about to occur.

Appeal from Oakland; Doty (Frank L.), J. Submitted April 14, 1954. (Docket No. 33, Calendar No. 46,055.) Decided June 7, 1954.

Case by Webster L. Douglas against James Samuel Holcomb and James A. Holcomb for damages for personal injuries sustained when struck by automobile while crossing street. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*William A. Alfs* (*Alfred W. Alfs*, of counsel), for plaintiff.

*Howlett, Hartman & Beier,* for defendants.

CARR, J. The traffic accident out of which this case arose occurred in the city of Birmingham on April 16, 1952, about 10 o'clock in the forenoon. At the time plaintiff was undertaking to cross Woodward avenue, a main-traveled thoroughfare approximately 76 feet 6 inches in width from curb to curb. He was proceeding in an easterly direction on the crosswalk on the south side of Hamilton street, which intersects

Woodward avenue from the east but does not cross it. The proofs disclose that Hamilton was 40 feet in width. Defendant James Samuel Holcomb was operating an automobile owned by the other defendant, with the knowledge and consent of such owner, in a westerly direction on Hamilton. He came to a stop before entering Woodward, then proceeded into the intersection and turned in a southerly direction, striking plaintiff 2 or 3 feet west of the center line of Woodward, throwing plaintiff a distance of 8 or 10 feet and causing personal injuries to him.

At the conclusion of plaintiff's proofs on the trial in circuit court defendants moved for a directed verdict on the ground that plaintiff was guilty of contributory negligence as a matter of law. The motion was taken under consideration pursuant to the provisions of the Empson act, CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1953 Cum Supp § 27.1461 *et seq.*). The motion was renewed following the introduction of testimony by the defendants and decision thereon again reserved. The jury returned a verdict in plaintiff's favor. A motion for judgment notwithstanding the verdict was submitted and denied. Defendants have appealed, claiming that the trial court was in error in failing to direct the verdict as requested and in refusing to enter judgment in their favor.

Does the testimony introduced by plaintiff indicate that he was guilty of contributory negligence as a matter of law? In determining whether the trial court was in error in not granting the motion for a directed verdict it must be borne in mind that the testimony and all legitimate inferences which may be drawn therefrom must be viewed in a light most favorable to plaintiff. *Anderson* v. *Kearly,* 312 Mich 566; *Lepley* v. *Bryant,* 336 Mich 224. Plaintiff testified in substance that before undertaking to cross Woodward avenue he made observations for ap-

proaching traffic and continued such observations while crossing, that he first noticed defendants' automobile when it was 10 or 15 feet away from him, and that he was struck approximately 2 feet from the center line of Woodward. The following excerpt from his testimony on cross-examination fairly indicates his claim as to the course that the automobile was following:

"*Q.* Now, as I understand you, Mr. Douglas, you saw this car for the first time when it was 10 to 15 feet away from you?

"*A.* I would judge it was about that.

"*Q.* And it was then to the north traveling south?

"*A.* To the north of me, not directly, on an angle.

"*Q.* Was it turning?

"*A.* Yes.

"*Q.* It was in the process of making a turn?

"*A.* It was making a turn, but I would say it was coming south."

Plaintiff's testimony was corroborated by that of other witnesses, including a taxicab driver who judged the speed of defendants' automobile as it approached plaintiff at "probably 20 to 25 miles an hour" and stated that the course of the car was "partly on a slight angle." Another witness, who was immediately in front of plaintiff as he was proceeding across the street, gave like testimony as to the speed of the automobile, stating further that she avoided being struck by jumping out of the way. It thus appears that defendants' car did not approach plaintiff in a straight line from the north but was engaged in making a turn from Hamilton to Woodward. A witness who observed the course of the vehicle described it as "a sharp normal turn."

In *Malone* v. *Vining,* 313 Mich 315, 321, this Court, in discussing the duties resting on a pedestrian undertaking to cross a public street or highway, said:

"Under present-day traffic conditions a pedestrian before crossing a street or highway, must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street or highway, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances."

Such statement has been quoted with approval by this Court in several subsequent decisions. The application of the tests therein set forth leads to the conclusion that the trial judge was right in submitting the case to the jury for determination of the issues of fact raised by the proofs, and in entering judgment on the verdict. In view of the testimony set forth in the record, it cannot be said, as a matter of law, that plaintiff failed to make reasonable and proper observations for approaching traffic before entering Woodward avenue and while crossing it, or that he failed to exercise the care and caution for his own safety that an ordinarily careful and prudent person would have exercised under the circumstances.

It is of some significance that the pedestrian immediately in front of plaintiff as he proceeded across the street was forced to jump to avoid being struck by defendants' car. According to her testimony she had first seen the automobile before it actually entered the intersection. Notwithstanding her observations she discovered herself in a place of danger after noting that the car was turning in a southerly direction. Plaintiff was in a less fortunate position and, while he undertook, as he claims, to avoid being struck, was unable to prevent injury to his person. As before noted, Hamilton street was 40 feet in width from curb to curb, and the north edge of the crosswalk was in line with the south curb of Hamilton.

Assuming that the course of the automobile was as described by the witness, above referred to, it is obvious that after it was in such a position as to clearly indicate that the driver intended to proceed south on Woodward it was in proximity to plaintiff and the other pedestrian immediately ahead of him. As a mathematical proposition, an automobile proceeding at a rate of 25 miles per hour travels 36.66 feet per second. At 20 miles per hour the distance covered in the same brief space of time is 29.33 feet.

This is not a situation in which a pedestrian has been struck and injured by an automobile coming in a straight line towards him, and which he should have observed had he been keeping a reasonable and proper outlook. In *Dokey* v. *Carpenter,* 300 Mich 648, in discussing a somewhat analogous situation, it was said (p 650):

"Defendant calls attention to numerous cases involving accidents occurring either in the day or nighttime, and in which we have held plaintiff ordinarily may not recover if he steps into the path of an oncoming car coming in a straight direction. Under ordinary conditions, it is the rule that the pedestrian must look and keep on looking, see what it is plain to see, and thus avoid being struck by a car coming in a straight line towards him. *Haley* v. *Grosse Ile Rapid Transit Co.,* 290 Mich 373; *Sloan* v. *Ambrose,* 300 Mich 188. No general rule can be stated, however, that will govern all factual situations."

In sustaining a judgment for the plaintiff against the claim of contributory negligence as a matter of law, it was further said (p 653):

"Not all reasonable minds would agree that plaintiff's failure to see was a contributing cause of the accident. Close questions are presented upon which reasonable minds may differ. Therefore, it was properly submitted to the jury."

In his declaration in the case at bar plaintiff quoted and relied on an ordinance of the city of Birmingham, in force at the time of the accident in question here, setting forth the duties of the driver of a vehicle making a left-hand turn at an intersection and further making it the duty of such driver to yield the right-of-way to pedestrians within the intersection. It appears from the evidence that the driver of defendants' car was convicted on a charge of failing to observe the duty imposed on him for the safety of the plaintiff. In *Lapachin* v. *Standard Oil Co.*, 268 Mich 477, 481, this Court quoted with approval from Huddy on Automobiles (5th ed), pp 593, 594, as follows:

" 'When one is standing in the street in a place where he has a right to be, or is walking along the highway, he can properly assume that the driver of a motor vehicle will not run him down, but will avoid contact with him. And he may also assume that the driver of an approaching machine will give a signal of warning so that an accident may be avoided.' "

See, also, *Burnash* v. *Compton*, 298 Mich 70.

In the instant case we think it may be said that had plaintiff noted the presence of defendants' automobile on Hamilton street and after it entered the intersection he might have assumed that the driver would not violate the municipal ordinance, until it became reasonably apparent that such violation was about to occur. *Guina* v. *Harrod*, 275 Mich 393; *Moore* v. *Noorthoek*, 280 Mich 431; *Morrison* v. *Grass*, 314 Mich 87.

Appellants rely on *Ashley* v. *Kilborn*, 333 Mich 283. There, however, the plaintiff, who was injured while attempting to cross Michigan avenue at Griswold street in the city of Detroit, testified that he observed that the traffic light was in his favor while he was at the curb and that following such observation he proceeded into the street a distance of 15

feet, where he was struck, without making further observations. On the basis of such testimony it was held that plaintiff had not, as a matter of law, exercised reasonable care for his own safety. It should be noted that the vehicle that struck plaintiff was traveling in a straight line on Michigan avenue. Attention is also called to *Levine* v. *Schonborn,* 336 Mich 312. There the plaintiff was held to have been guilty of contributory negligence barring recovery because of her failure to note that a vehicle traveling 15 miles per hour was approaching directly on her right for a distance of 50 feet. Plaintiff did not see the vehicle before it struck her. *Cioffari* v. *Blanchard,* 330 Mich 518, and *McKenzie* v. *Sternicki,* 338 Mich 487, are likewise distinguishable from the case at bar on the basis of the facts involved.

The judgment is affirmed. Plaintiff may have costs.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.