HAMMERBACHER *v.* BABECHENKO.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.

Testimony and all legitimate inferences therefrom must be viewed in the light most favorable to plaintiff in determining whether the trial court's denial of defendant's motion for directed verdict was proper.

2. AUTOMOBILES—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

The issue of plaintiff eastbound pedestrian's contributory negligence was properly submitted to jury in his action against northbound motorist on a one-way street, speeding 35 miles per hour in a 25-mile per hour zone at 11 p.m. late in November at an intersection whereat the street was crossed by 2 other streets from the east and southeast that merged to form only 1 street to the west, and there is testimony that while plaintiff left the curb with the traffic light in his favor it turned against him during his crossing and, although he saw defendant some 80 to 100 feet away, he was unable to avoid being hit at approximately the center of the pedestrian crosswalk.

3. APPEAL AND ERROR—INSTRUCTIONS—NEW TRIAL.

A trial court's entire instructions, not merely small excerpts therefrom, should be considered by the Supreme Court when determining whether or not the trial court committed reversible error in instructing a jury and in not granting a new trial because of such claimed error.

4. AUTOMOBILES — PEDESTRIANS — CONTRIBUTORY NEGLIGENCE — INSTRUCTIONS.

Claimed error of trial court in instructing jury in action by pedestrian against motorist for injuries received at inter-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 886.
[2] 5A Am Jur, Automobiles and Highway Traffic § 756.
[3] 3 Am Jur, Appeal and Error § 1097.
[4] 5A Am Jur, Automobiles and Highway Traffic § 1091 *et seq.*

section at 11 p.m. late in November as to observation and miscalculation of distance away and speed of automobile *held*, not reversible error, in view of instructions given as to observation in avoidance of contributory negligence and no showing of any misstatement of fact by the trial court in the instruction nor request made for further and more specific instruction.

Appeal from Saginaw; Beers (Henry L.), J., presiding. Submitted January 16, 1957. (Docket No. 90, Calendar No. 47,020.) Decided April 22, 1957.

Case by Leonard C. Hammerbacher against Walter S. Babechenko for damages sustained when struck by automobile at crosswalk. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Harold J. Egloff,* for plaintiff.

*Heilman & Purcell (F. D. Heilman,* of counsel), for defendant.

KELLY, J. Plaintiff was injured when he was struck by defendant's automobile as he was crossing the street intersection of East Genesee, North Jefferson and Lapeer avenues in the city of Saginaw. Appellant contends that "the broad appellate questions involved are (a) was the plaintiff guilty of contributory negligence as a matter of law, and (b) if not, did the trial court err in not granting a new trial."

In the trial court's opinion filed on motion for judgment notwithstanding verdict and alternative motion for new trial, the court stated:

"It must be borne in mind in considering whether this case should have been left to the decision of the jury that this intersection is a most unusual intersection. * * * It can really only be understood by examination of a map of the intersection.

\* \* \* It is by no means the usual case of a pedestrian crossing the ordinary right-angle intersection."

Jefferson avenue runs north and south, being a paved street (as are all of the streets) with a width of 44 feet from curb to curb. This is a one-way street for northbound traffic.

Genesee avenue is approximately 65 feet wide, and as it proceeds from the east, it runs in a somewhat northwesterly direction, and then when it intersects Jefferson avenue, it bends and proceeds in almost a westerly direction.

Lapeer avenue, as it comes from the east, runs in a westerly direction, being 44 feet wide, and after intersecting Jefferson avenue, merges into Genesee avenue on the west side of Jefferson, and here loses its identity. Because Genesee avenue, on the east side of Jefferson, runs somewhat northwesterly, and because Lapeer avenue, on the east side of Jefferson avenue, runs almost true east, a flatiron is formed on the east side of Jefferson where Genesee and Lapeer commence their merger.

The intersection of Federal avenue and Jefferson avenue is one block south of the intersection in question. The traffic light at the intersection of Federal and Jefferson is synchronized with the 3 traffic signals which control the intersection in question, the 3 latter being so synchronized that they all show green in the same direction, and they all show red in the same direction at alternate periods. Thus, the light at Federal and Jefferson and the 3 lights at the intersection where the accident occurred are all synchronized so that they all show the same color in the same direction at the same time.

Three islands abut this intersection. An island on Genesee to the west of the intersection is a long, narrow island, which follows the bend of Genesee previously mentioned, and is midway between the

lanes for east- and westbound traffic on Genesee avenue.

Another island is to the east of the intersection on Genesee and also lies between the east- and westbound lanes on this street.

When east bound traffic on Genesee comes to the first island, there is a sign on the west end of the island which says "Keep to Right," and at the intersection itself, there is a sign on the west end of the other island which says "No Turn." Thus, a car going east on Genesee, must stay on Genesee, and can neither turn left to go north on Jefferson, nor can it proceed down Lapeer.

When westbound traffic approaches this intersection on Genesee, it has 2 alternatives: It can either go straight through on Genesee or it can turn north onto Jefferson, but if traffic desires to go north on Jefferson there is a sign on Genesee near the flat-iron point which says: "Right Turning Vehicles Stop After Turning—Then Move."

Traffic going west on Lapeer has 2 alternatives: It can either turn north onto Jefferson or go straight through proceeding to the right of the island and then merge with westbound traffic on Genesee.

The accident occurred about 11 p.m. on November 24, 1954. Plaintiff had walked south for about a block on Jefferson avenue and at the corner of Genesee and Jefferson had turned to his left and was proceeding easterly across Jefferson and had reached the middle of Jefferson when struck by defendant's automobile.

Defendant was driving north on Jefferson and stopped for a red light at Federal avenue, one block south of the intersection in question. When the light turned green at Federal, defendant proceeded north and his testimony that the light was green as he entered the intersection in question was not refuted. The question of defendant's negligence is

not presented in this appeal, as the evidence was to effect that defendant was traveling 10 miles beyond the 25 miles per hour legal speed limit as he entered into and crossed said intersection. Defendant admitted that there was no other traffic on the street and there was nothing to obstruct his view of a pedestrian crossing said street, but that he did not see plaintiff until he struck him. Further, that there was plenty of room for him to have turned either to his right or left and thus avoid striking plaintiff if he had seen him in time.

Because of the fact that the main question in this appeal is whether plaintiff's testimony established contributory negligence as a matter of law, all testimony in the record by plaintiff as to observations made by him as he crossed Jefferson is herewith set forth in this opinion:

### Direct Examination

"From the cigar store I went south on North Jefferson to the corner of Genesee. Nick's Cigar Store is located regarding the intersection about 1/2 block, or a little better, north on the west side of the street.

"*Q.* And as you reached the intersection of North Jefferson and Genesee avenue what did you do?

"*A.* Well, I looked to the south and to the east. To the south I had green lights. When I went east on Jefferson, then I got to the intersection and I seen a car coming. I hesitated and I stepped backwards and he came along and hit me.

"*Q.* You say you started to cross the intersection of North Jefferson?

"*A.* Yes.

"*Q.* Did you look at the traffic light and see if you could do that?

"*A.* It turned red when I was halfway across.

"*Q.* When you first stepped off the curb, Mr. Hammerbacher, what was it.

"*A.* Green.

"*Q.* What path in the street did you occupy when you started to cross North Jefferson? Where were you walking?

"*A.* In the yellow lines for pedestrians.

"*Q.* And you continued to make your observations, as you said, as you were walking across this street?

"*Mr. Heilman:* He hasn't testified to that. Please don't ask leading questions.

"*Q.* What did you do as you walked across this street?

"*A.* I looked to the south and seen I had the green light, and I started out walking east until I got to the middle of the street and seen it changed red. I hesitated and stepped backwards and saw the car coming and it hit me in the side.

"*Q.* Where was this car when you first saw it coming?

"*A.* On South Jefferson.

"*Q.* How far away from you was it when you first saw it coming?

"*A.* It must have been 100 feet.

"*Q.* Did you see any car at the time you first stepped off the curb down here on North Jefferson?

"*A.* I seen the light coming, that's all.

"*Q.* You say after you were halfway you saw this car?

"*A.* Yes.

"*Q.* At that time in what direction was this car coming?

"*A.* Going north on Jefferson.

"*Q.* Did you make any observation as to the car before you proceeded?

"*A.* Yes, I hesitated and stepped backwards, but it came so fast I couldn't make it.

"*Q.* Were you able to estimate the speed of that car at that time?

"*A.* It must have been 35 miles an hour.
\* \* \*

"*Q.* Now, just prior to the accident, did you observe any other traffic coming from the south on Jefferson, coming from South Jefferson or from Genesee toward you?

"*A.* I, —

"*Q.* I mean, any automobiles.

"*A.* I looked to the south and seen I had a green light and I had it and I walked east. I got about 1/2 way and then I seen it turning red, and then I hesitated and stepped backwards and then that car came along and hit me.

"*Q.* Where was that car when you first saw it?

"*A.* On South Jefferson, about 80 feet from me.

"*Q.* Did you see any car prior to the time you saw that car?

"*A.* I seen some lights on South Jefferson.

"*Q.* And you state to the jury the light was green as you started to cross that street?

"*A.* Yes, sir.   *   *   *

*Cross-Examination*

*   *   *

"*Q.* Tell us what happened from the time you left the pool room up to the time of the accident.

"*A.* I went south on North Jefferson until I got up to the corner and I walked south and seen I had the green light and I looked east and kept on walking to about the middle of the street, then I looked south and I seen the car coming at me and I hesitated and stepped back and he was coming at quite a speed and he hit me, knocking me down.   *   *   *

"*Q.* Tell us what happened, again, from the time you left the pool room.

"*A.* I went south on North Jefferson up to the corner. Then I looked for the light to the south. I seen it was green. Then I looked to the east and kept on walking until about the middle and looked south again and seen the light had changed. I hesitated and stepped back and he hit me.

"*The Court:* You looked south and saw what?

"*A.* I looked south and the red light was changing on that.

"*Q.* Where were you when you saw the light changing to red?

"*A.* About the middle of the block.

"*Q.* You mean, the middle of the intersection. So there is no question about it, half way between the 2 sides of Jefferson?

"*A.* Yes.

"*Q.* Which one of the traffic lights did you look at?

"*A.* The one on the island.

"*Q.* Was it this island? (Indicating on sketch on blackboard.)

"*A.* That one and this other one. (Indicating.)

"*Q.* You look at both of them?

"*A.* Yes, sir.

"*Q.* You were out here in the middle of the street when you looked? (Indicating.)

"*A.* Yes, sir.

"*Q.* So you had to kind of look backwards to see this one?

"*A.* Yes, but not much.

"*Q.* This island is back from the west side of Jefferson, is it not? (Indicating.)

"*A.* Yes, sir.

"*Q.* So you then looked over here to the north island?

"*A.* Yes.

"*Q.* And then you looked over here to this other island?

"*A.* Yes, sir.

"*Q.* Which island were you looking at when you saw the light change?

"*A.* The east one.

"*Q.* At that time you claim you were in the middle of the crosswalk?

"*A.* Yes, sir.

"*Q.* And how far away then was that car from you at that time?

"*A.* It must have been about 80 feet.

"*Q.* You gave the figure of 100 feet at one time. Could you tell us about where the car was in relation to the intersection or these islands here? (Indicating.)

"*A.* It must have been between the 2 islands where Genesee comes in.   *   *   *

"*Q.* From what you have told me, then, you were a few steps to the east of the center of this northerly crosswalk where we got the X here, (indicating) when you first saw that car?

"*A.* Yes, sir.

"*Q.* And at that time the car was about 80 feet away?

"*A.* Right.

"*Q.* And then you hesitated, you say, and then you started up to go further east?

"*A.* Yes.

"*Q.* Is that correct? I didn't hear you. Then you started to go east?

"*A.* Yes.

"*Q.* And about how many steps would you say you took when you started to go east before the impact occurred?

"*A.* About 2 steps.

"*Q.* An ordinary step? That would be about 5 feet?

"*A.* Maybe, so.   *   *   *

"*Q.* Now, will you tell us again just what you did after you saw the light was green for east and west traffic.

"*A.* I started out, I looked to the south and seen I had the green light, I looked to the east and I walked out toward the other side, and I walked to the middle and I looked to the east again and there was a red light and a car coming. I hesitated, walked back a couple of steps and the car hit me.

"*Q.* You walked back a couple of steps. Did you go to the east or west?

"*A.* East.

"*Q.* You didn't walk back a couple of steps?

"*A.* I hesitated there.

"*Q.* Did you walk back a couple of steps, as you just said, or did you step ahead a couple of steps?

"*A.* A couple of steps back.

"*Q.* To the west?

"*A.* Yes.    *    *    *

### Redirect Examination

*    *    *

"*Q.* Let's go back to where you were in this highway when you began looking south. You looked south when you first started crossing?

"*A.* Yes, sir.

"*Q.* And when you saw the car 80 to 100 feet away from you, Mr. Hammerbacher, how far had you gone across the street.

"*A.* About half way.

"*Q.* What did you do when you saw it?

"*A.* I stepped back for a couple of steps. I hesitated first.

"*Q.* You never went ahead after you tried to step back to avoid it?

"*A.* I tried to get away from it, but I couldn't.

"*Q.* You did that by stepping back—

"*A.* Yes.

"*Q.* After you hesitated?

"*A.* Yes, sir.

"*Q.* When you first saw the car down 80 feet, again, as you walked there, coming right at you, you could have walked forward for a minute and then stepped back?

"*A.* Yes, sir.    *    *    *

"*Q.* Now, Mr. Hammerbacher, at the time you were walking across North Jefferson you stated you looked to the south?

"*A.* Yes, sir.

"*Q.* Did you look at Lapeer, also?

"*A.* To the east.

"*Q.* Where to the east?

"*A.* On Lapeer, down North Jefferson to the Lapeer side.

"*Q.* Did you look anywhere else in the east?

"*A.* I looked at a car coming from the south side.

"*Q.* Now you have had experience walking along that crosswalk, have you not, Mr. Hammerbacher?

"*A.* Yes, right.

"*Q.* And those streets there, you are acquainted with those streets, Lapeer, Genesee and Jefferson, all coming together?

"*A.* Yes.

"*Q.* And when you went out across you knew there was liable to be a lot of traffic in all directions?

"*A.* Right."

Defendant relies upon *Boyd* v. *Maruski,* 321 Mich 71; and *Ashley* v. *Kilborn,* 333 Mich 283.

In the *Boyd Case, supra,* this Court concluded that under plaintiff's testimony she had failed to make observation as she crossed the street and was, therefore, guilty of negligence as a matter of law; and, further, that because the traffic light had been green in her favor before she started to cross the street she could have anticipated the light might change before she could complete the crossing.

In the *Ashley Case, supra,* plaintiff was injured while attempting to cross Michigan avenue from the northwest to the southwest corner at its intersection with Griswold, in the city of Detroit. Plaintiff testified the light was green before he started to cross the street; that he looked both to the east and west as he stepped off the curb; that he wasn't sure whether the light changed as he crossed the street, and that he wasn't paying attention to traffic that might come from the east or the west because (p 286) "when I go across the street I pay attention to the light that I am going across on." The Court held in this case that plaintiff was guilty of contributory negligence as a matter of law.

Neither of the above cases is controlling in the case presented in this appeal. The case of *Werker*

v. *McGrain*, 315 Mich 287, would be more in point. In this case plaintiff while crossing Grand River avenue at the intersection with Oakman boulevard, in the city of Detroit, was struck by an automobile driven in a westerly direction by defendant. Plaintiff had crossed Grand River at this intersection to the north side, in order to mail a letter, and was on her return to the south side when she was struck. Before recrossing the avenue she had observed traffic coming from the east and, also, the traffic lights. After the light changed to green she started, and when she had proceeded for about 15 feet the light turned to amber. Without stopping in the safety zone near the car tracks, she hurried across. She did not recall at what point in the street she was struck, her last recollection being that she had reached the middle of the avenue.

In deciding the *Werker Case, supra*, this Court held that plaintiff was not guilty of contributory negligence as a matter of law and that the facts presented a question for the jury's determination; that the change of a traffic light at a street intersection while a pedestrian is crossing does not authorize a motorist, who then had traffic light in his favor, to continue his course at high speed regardless of the circumstances open to his view, and that if there was substantial evidence tending to support the verdict it should not be set aside, even though the Supreme Court might be in doubt as to the ultimate facts.

Testimony and all legitimate inferences therefrom must be viewed in the light most favorable to plaintiff in determining whether denial of defendant's motion for directed verdict was proper—*Douglas* v. *Holcomb*, 340 Mich 43. The testimony must be construed as strongly in plaintiff's favor as is reasonably possible on appeal from denial of defendant's

motion for directed verdict—*Wisnaski* v. *Afman,* 341 Mich 453.

The testimony in this case sustains the court's statement in its opinion that:

"In view of the nature of this intersection and the number of observations that any person must necessarily make if he is to negotiate this crossing in safety and the testimony as to observations which it is not disputed the plaintiff did make, I felt that this question could only be properly left to the decision of the jury under proper instructions."

The court did not err in submitting the question of contributory negligence to the jury.

Defendant claims the court erred in not granting a new trial because of improper and erroneous instructions. This Court has repeatedly held that in determining such a question the entire instructions, and not merely small excerpts, should be considered.

Defendant asserts that the court erred in giving the following instruction:

"A pedestrian lawfully upon a highway is not required to refrain from crossing such highway whenever a car is in sight and there may be cases where he may properly exercise his judgment upon the question of when he should attempt to cross a highway and it may happen that he has miscalculated the distance that the automobile is away from him or the speed at which it is traveling. If such pedestrian was exercising that care and caution that a reasonably prudent person would have exercised in crossing or walking upon such highway under the circumstances and conditions then existing the pedestrian is not necessarily guilty of contributory negligence in so doing, although he may have miscalculated the distance that the automobile was away or the speed at which it was traveling or both."

We cannot agree with defendant's contention that there was no testimony which would authorize the

giving of such an instruction, and we further point out that defendant did not call to the court's attention any misstatement of fact in its instruction to the jury, nor did the defendant request further and more specific instruction.

It is worthy to note, however, that the trial court instructed the jury in regard to plaintiff's duty to avoid contributory negligence, as follows:

"I instruct you, if the plaintiff saw or in the exercise of due care should have seen the defendant's approaching automobile by keeping a proper lookout in time to have taken precautions to avoid the automobile striking him by stepping out of the way of the automobile and he failed to keep such lookout you will be warranted in finding that he was guilty of contributory negligence."

An examination of all parts of the instruction complained about does not disclose reversible error. We find that the jury was properly instructed and that the verdict was not against the great weight of the evidence.

Judgment affirmed, costs to appellee.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, VOELKER, CARR, and BLACK, JJ., concurred.