Henry D. GREPKE, Plaintiff-Appellee,

v.

GENERAL ELECTRIC COMPANY, a corporation, Defendant-Appellant.

No. 12956.

United States Court of Appeals Seventh Circuit.

July 1, 1960.

Rehearing Denied Aug. 11, 1960.

Duffy, Circuit Judge, dissented.

Robert Y. Keegan, Quincy D. Baldwin, Fort Wayne, Ind., for appellant.

Albert L. Jeffers, Thomas D. Logan, Fort Wayne, Ind., for appellee.

Before DUFFY, SCHNACKENBERG and KNOCH, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

This action was brought by plaintiff, Henry D. Grepke, an employee of defendant, General Electric Company, a corporation, to recover damages for its alleged appropriation of property rights he claimed to have in a novel method for inserting the balancing weights in the armatures of electric motors. After trial before a jury, a verdict for plaintiff for $5,000 damages was returned. Judgment on the verdict was entered and defendant has appealed. Defendant relies for reversal on the failure of the trial court to grant its motions to direct a verdict, one such motion having been made at the conclusion of the plaintiff's case and another at the conclusion of all of the evidence. Defendant also moved unsuccessfully for a judgment notwithstanding the verdict.

There is competent evidence in the record tending to prove, *inter alia*, the facts which we now set forth.

Plaintiff had been employed by defendant for over 33 years, including 1940 to 1959, when he worked as an armature balancer in the Finishing Armature Section of the Series or Specialties Motors Department 401, in Division 1, Building 4, on the third floor of defendant's Fort Wayne, Indiana, plant. In 1940, William Wickliffe was a supervisor or foreman in said Division 1.

In 1940 plaintiff conceived what he believed to be a new and novel method for balancing an armature by the way he inserted balancing weights therein, which idea he submitted to defendant in accordance with a suggestion system which it maintained, while a confidential relationship existed between them.

The operation of the suggestion system was as follows: Ideas received found their way to a suggestion office where they were typed up, assigned a number and "acknowledged". That office filed the original typed copy and a duplicate typewritten copy was sent to a secretary of a subcommittee within a particular section or department where the suggestion would be expected to be used. This subcommittee normally consisted of men similar to a cost reduction man, a cost accountant, or a cost man, a time study man, generally a general foreman and an engineer or a planning engineer. The subcommittee in the department normally passed on whether the idea would be used and made the reward or referred the matter to a "central committee" composed of three or four additional men. If the subcommittee did not return the typed duplicate copy to the suggestion office within some several weeks, it was notified, but there were no regulations that prevented the subcommittee from creating its own files or records of ideas. If any "problems" arose, or if the person originating the idea requested it, the invention would

then be reviewed by the secretary and a central committee. In some instances inventions would be referred to an "overall committee" at Schenectady, New York, or to a planning engineer or planning people employed in the Fort Wayne plant to improve motors, but no record was kept when that was done. Such planning people would also have access to the original ideas on file upon request, and they sometimes kept a separate file or group of ideas for future reference and no record was kept when this was done. In 1953 all suggestion records were turned over to and kept by the department to which they would have been referred. However, since 1947 it was customary to destroy after six years the suggestion records except a log book.

Plaintiff submitted his idea to the foreman and, under date of November 19, 1940, the committee on suggestions acknowledged receipt thereof and assigned a number to the suggestion. Defendant rejected plaintiff's idea and notified him accordingly. His idea was to insert balancing weights from the top of armatures. Under the old method, balancing weights were inserted from the end of armatures and this method continued until 1953. In that year, foreman Wickliffe determined that a large number of armatures were damaged and rejected as a result of the use of the old method. Wickliffe then assigned the task of finding a different way to balance armatures to one John Pugh, who had been a foreman in training under Wickliffe for some six months in the same Department 401, in Division 1, and later became a "motion time survey specialist".

In April 1953, Pugh submitted a "cost improvement project", consisting of a method of balancing armatures, which was placed in production in 1954.

Pugh, as a witness for defendant, testified that in 1953 he independently invented the method now employed by defendant, that it consisted in inserting the balancing weights from the top instead of the ends of armatures, and that he was unacquainted with Grepke at the time and had no access to or knowledge of Grepke's earlier 1940 suggestion.

Defendant's instruction No. 1, which was given by the court to the jury, reads:

"The Plaintiff Henry Grepke's complaint alleges that in 1954, the Defendant General Electric Company in effect utilized a novel method for inserting balancing weights in the armatures of electric motors that was identical to the method previously suggested to it by the Plaintiff in 1940. By its answer, the Defendant General Electric Company denies that the methods are similar but, on the contrary, claims that its present method of so inserting such balancing weights is entirely dissimilar and different from that suggested by the Plaintiff. You are instructed that the burden of proving such methods are substantially equivalent or similar is upon the Plaintiff, and if you find from a fair preponderance of the evidence that such methods are not substantially equivalent or similar and that the Defendant's present method differs in material respects from that suggested by the Plaintiff, you should find against the Plaintiff and for the Defendant, General Electric Company."

■ 1. Was Pugh's alleged invention in 1953 an appropriation of plaintiff's suggestion to defendant in 1940? Under proper instructions, to which no objection by either party was made, the jury in effect answered this controlling question in the affirmative. Defendant focused the attention of the jury upon the issue between the parties as to whether plaintiff's method and Pugh's method were substantially similar or equivalent, by defendant's instruction No. 1, and the jury by its verdict for plaintiff thereby found that issue against defendant.

We might add that this court in Smith v. Dravo Corp., 203 F.2d 369, 377, said:

"As a general rule the similarity standing alone is an adequate basis upon which to find misappropriation. Thus, in Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912, 924, the court said:

"'The similarity of defendant's device to that of complainant is strong proof that one was copied from the other'."

It is important to note that there is no question raised on this appeal as to the new and novel nature of plaintiff's idea or as to the existence of a confidential relationship between plaintiff and defendant. Plaintiff's idea was at all times in possession of defendant from and after 1940. Moreover, Pugh worked for plaintiff's foreman, Wickliffe, he had conversation with that foreman concerning the balancing of armatures, he had access to the files, and he worked in the same building, division and department as plaintiff.

As the court said in Golding v. R. K. O. Pictures, 1950, 35 Cal.2d 690, 221 P. 2d 95, 98:

"* * * Was the plaintiff's material copied by the defendant? There will seldom be direct evidence of plagiarism, and necessarily the trier of fact must rely upon circumstantial evidence and the reasonable inferences which may be drawn from it to determine the issue. An inference of copying may arise when there is proof of access coupled with a showing of similarity. * * Where there is strong evidence of access, less proof of similarity may suffice. * * *"

In Bowles v. Zimmer Mfg. Co., 277 F.2d 868, 875, we said, in discussing the defendant's motion for a directed verdict:

"On such a motion, it is the duty of the court to consider the evidence in the light most favorable to plaintiff and to consider as proven facts those which the evidence tends to prove, drawing against the party requesting a directed verdict such inferences as the jury might reason-

ably draw from the evidence. Johnson v. Gaugh's Estate, 125 Ind.App. 510, 124 N.E.2d 704 (1955); Hammerbacher v. Babechenko, 348 Mich. 139, 82 N.W.2d 456 (1957)."

Defendant argues:

"The only way the jury could possibly fix liability on the defendant for the misappropriating and stealing of Grepke's suggestion would be to speculate that Pugh somehow and in some manner was told about the Grepke suggestion and utilized the same rather than that he developed his method by his own inventive efforts. Under the established rules of law, such conjecture and speculation cannot be indulged in and in the face of the positive denial of such fact by unchallenged evidence, the Trial Court should have accepted its responsibility and directed a verdict for the defendant as a matter of law."

However, in Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, the court made it clear that a jury may draw inferences from the evidence. The court, 327 U.S. at page 653, 66 S.Ct. at page 744, said:

"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might

draw a contrary inference or feel that another conclusion is more reasonable."

Moreover, the credibility of Pugh and the weight to be given to his testimony were questions for the jury. We are not impressed with the contention of defendant that Pugh was a disinterested witness. His relation to defendant and the effect of the outcome of this case upon his claim that he was the inventor of a valuable method cast considerable doubt upon any contention that he lacked interest in this litigation. Nor was the jury required to believe Pugh's testimony which was to the effect that he had no knowledge of plaintiff's method, especially as there was evidence that he had opportunities for access to the suggestion which plaintiff in confidence had given to defendant. We do not consider fatal to plaintiff's case that the period from 1940 to 1953 elapsed before defendant openly appropriated plaintiff's idea. It is common knowledge that, during most of that period, the United States was engaged in wars and that manufacturers such as defendant were preoccupied in assisting the government in its war effort, leaving little opportunity for development of new ideas.

We cannot say that on the entire record the court had a duty to direct a verdict in favor of defendant or to enter judgment notwithstanding the jury's verdict.

2. Defendant argues that the evidence shows that in 1954 the method of inserting balancing weights from the top of armatures instead of from the end was well-known in the industry. It therefore concludes that the alleged misappropriation by defendant of plaintiff's suggestion, disclosed in confidence and in which he had a property right, disappeared as a matter of law.

This position is unsound. If, as the jury evidently believed from the evidence, defendant in 1940 solicited and obtained in confidence plaintiff's idea and in 1953 Pugh appropriated that idea for defendant's benefit, we consider irrelevant the alleged fact that in 1954, or even before then, from sources other than plaintiff, a similar method had been adopted in the industry. Certainly defendant does not contend that Pugh resorted to general knowledge in the industry in reaching the result which he claimed to have achieved in 1953.

In Smith v. Dravo Corp., 203 F.2d 369, 375, we said, quoting from Nims, Unfair Competition and Trade Marks, sec. 148:

"The fact that a trade secret is of such a nature that it can be discovered by experimentation or other fair and lawful means does not deprive its owner of the right to protection from those who would secure possession of it by unfair means."

3. Defendant contends that "there was a complete absence of credible evidence to sustain a verdict for $5,000 in damages". We note the obvious ambiguousness of this language. While defendant in the district court attacked the verdict by a motion for a new trial, which was overruled, no reversal is sought in this court upon the overruling of that motion. It is upon a motion for a new trial that defendant might have properly made its argument that the amount of the verdict was excessive or that the evidence of damages was not credible. But no ruling upon defendant's motion for a new trial is before us now. As we have pointed out, in this court defendant relies for reversal on the trial court's failure to grant its motions to direct a verdict in its favor. On such motions the credibility of evidence and the effect or weight thereof cannot be decided. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Twin City Hardwood Lumber Co. v. Dreger, 8 Cir., 199 F.2d 197, 198. On the record before us we would be limited to the question (if raised by defendant) of whether there is a failure of *any* evidence that plaintiff was damaged. Only if defendant raised that question and if we find in defendant's favor on that question, can we say that the district court erred as a matter of law in overruling defendant's motions for a di-

rected verdict and for judgment notwithstanding the verdict.

On behalf of himself, plaintiff testified to facts which we now summarize.

In the Fort Wayne plant in 1954, 1955, 1956 and 1957, an estimated 10,000 armatures per week were processed, of which 30% utilized the plaintiff's idea. Two thirds as many per week were produced in 1958 of which 30% used his method and 5000 were produced per week in 1959, of which 40% utilized that method. Cost and time studies of the new method showed a savings of 2.28 minutes for each 5 armatures on one model, a time savings of 1.13 minutes for armatures of another model, and a time savings of .86 a minute per armature on another model. Rates paid to employees for this work were reduced accordingly. The motions savings represented by the invention amounted to 12 seconds per weight used in an armature, premised upon the elimination of at least 6 motions by the new invention. During the time involved, an average of some six to eight weights were inserted in each armature and persons doing this work were paid $2.60 to $2.85 per hour.

The attorney for defendant told the court that the defendant " * * * knew perfectly and accurately * * * how much was paid on each one of these armatures * * *", what the hourly rates were and presumably therefore the exact savings, which information was not in the possession of plaintiff. The record also shows that he stated " * * * that the defendant, in the absence of a jury, certainly could have proved the value of the idea to the defendant * * *." Defendant, however, chose to rely entirely on the testimony of plaintiff and offered nothing to that effect.

In A. C. Becken Co. v. Gemex Corporation, 272 F.2d 1, 5, we said:

"We do not consider that the proof of damages offered by plaintiff was speculative in nature and that it is impossible to contend that plaintiff has been damaged by the action taken by defendant, as the latter contends. Rather, we think, that there was no speculation as to the fact of actual damage and that plaintiff's business was seriously curtailed by the cutoff by defendant. It is not the law that the defendant who caused the damage can be permitted to escape liability because it is difficult for plaintiff to express in terms of dollars the damages it has suffered. William H. Rankin Co. v. Associated Bill Posters, 2 Cir., 42 F.2d 152, at page 155, where the court said:

" ' * * * This evidence, while purely an estimate and introduced as such, was proof of a kind as definite and certain as the subject-matter admitted. It had to do with what was never actually earned because of the defendants' wrongdoing. The witness testified from his knowledge of the business history, made his calculations upon what appears to be a reasonable basis, and the defendants had ample opportunity by cross-examination or the offer of their own evidence on the subject to discredit him and show any fallacy in his reasoning or testimony. * * *'

"The district court was led into error in finding as a fact and concluding as a matter of law that plaintiff was not damaged as a result of defendant's conduct. Damage was proved. * * *"

In the case at bar the evidence proves that plaintiff was damaged by defendant's appropriation of his idea. The action of the district court in overruling defendant's motion for a new trial is not before us for review. No error was committed in the denial of defendant's motions now under review.

We find no error in this record and the judgment of the district court is affirmed.

Affirmed.

DUFFY, Circuit Judge (dissenting).

The burden was upon the plaintiff to prove that the adoption by defendant in 1954 of the method of inserting balanc-

ing weights was the result of copying plaintiff's suggestion made some thirteen years prior thereto. In my judgment, there was a complete failure on plaintiff's part to meet the burden which was upon him.

If other employees of defendant, without knowledge of plaintiff's earlier suggestion, hit upon the same idea, and defendant adopted same, there would be no liability on the part of the defendant. Also, if defendant adopted in 1954 an idea from a practice then well established in the industry, again there would be no liability. It seems clear that for liability to attach, defendant must have knowingly misappropriated plaintiff's suggestion made thirteen years earlier. In my view, the motion for a directed verdict should have been granted.