**WILLIAM H. RANKIN CO. v. ASSOCIATED BILL POSTERS OF UNITED STATES AND CANADA (OUTDOOR ADVERTISING ASS'N OF AMERICA, Inc.) et al.**

**CHARLES A. RAMSAY CO. v. SAME.**
Nos. 172, 173.

Circuit Court of Appeals, Second Circuit.
May 19, 1930.

Appeals from separate judgments for the plaintiff in each case, entered in the Southern District of New York, on verdicts in two actions brought under section 7 of the Sherman Anti-Trust Law (Act of July 2, 1890, 26 Stat. 209 [15 USCA § 15]), and by stipulation tried together before the same jury. The damages recovered on account of the unlawful combination in restraint of interstate trade and commerce in advertising bill posters or lithographs, commonly displayed on outdoor billboards, were trebled. Affirmed.

The plaintiffs will be called Rankin and Ramsay, respectively. The business of Rankin comprised soliciting and placing advertising in newspapers, magazines, and street cars, as well as on billboards and other structures on which it could be displayed out of doors. Ramsay solicited and placed bill posting and painted display advertising exclusively. Neither owned or controlled any billboards.

The corporate defendant was organized in 1891, and under different names has since succeeded in enlisting in its membership owners of billboards throughout the United States and Canada to such an extent that for all practical purposes it could and did before the government brought its suit for dissolution in 1912, as noted below, dominate and control what is commonly known as billboard advertising throughout the country. Its membership, governed by its rules and regulations, so thoroughly covered towns and cities of a population over five thousand that this kind of advertising could not profitably, if indeed it could at all, be placed on a national scope without conforming to its requirements.

It was largely responsible for the extensive growth of billboard advertising, from the comparatively small scale on which it was used at the time the association was organized, to widespread proportions. Its members each owned or controlled a so-called plant or series of plants. The "plants" were the billboards and structures on which the advertising matter was posted in one town or city. The plant owners did not usually solicit business from advertisers, although until 1911 a few were permitted to do so. In that year all soliciting memberships were abolished, and members were confined to the display on their boards of posters sent them for that purpose by solicitors duly licensed by the association.

These plaintiffs were two of such licensed solicitors. They procured contracts from advertisers, entered into subcontracts exclusively with association members in the territory to be covered, and, with or without the aid of the advertiser, designed, had lithographed, and shipped the posters to the members for display on their boards. The solicitors received a percentage of the charge the displaying members made for the use of their boards and services in pasting the posters on them. Sometimes stock posters which were suitable for general use were purchased by the advertiser and used by the solicitor but, whether stock posters or specially prepared ones were used, they were shipped from state to state to get them to the posting members for display. As shown below, the practices of these defendants have already given rise to litigation in which their unlawful character has been fully established.

On August 3, 1912, the government filed a petition under the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15) in the District Court for the Northern District of Illinois, Eastern Division, against the association, its officers, directors, and certain of its licensed solicitors, of which the plaintiff Rankin, then known as the Mahin Advertising Company, was one, to secure a dissolution and injunction against further illegal practices. See United States v. Associated Bill Posters et al. (D. C.) 235 F. 540. A decree was entered July 6, 1916, effective September 1, 1916, of which the now important part follows:

"First.—That the petition is dismissed as to the defendants ° ° * Mahin Advertising Company. ° ° °

"Second.—That the defendants, except those dismissed, heretofore formed and are now parties to a combination or conspiracy to restrain interstate and foreign trade and commerce in posters, by the means hereinafter specifically enjoined, in violation of the Act of Congress of July 2, 1890, entitled: 'An Act to protect trade and commerce against unlawful restraints and monopolies.'

"Wherefore, the defendant, Association Billposters and Distributors of the United States and Canada, which name has been

changed since the filing of the petition herein to Poster Advertising Association, and the defendants, * * * James A. Reardon, * * * George L. Chennell, * * * Phinelan B. Haber, * * * A. M. Briggs, * * * Ivan B. Nordhem Co., * * * and all persons acting for or on behalf or in connection with said Associated Billposters and Distributors of the United States and Canada, or any of its members, concerning any of the matters set forth in the petition herein, are permanently enjoined and restrained from further carrying out the aforesaid combination or conspiracy, and from entering into any other combination and conspiracy to restrain trade and commerce in posters by any similar means or devices. * * * "

The Mahin Advertising Company, as to whom the petition was dismissed, is, as before stated, now known as the plaintiff Rankin. The individual defendants against whom judgment went in the two instant cases were all enjoined in that decree. An appeal by the defendants from that decree was dismissed by the Supreme Court on March 27, 1922. There is no satisfactory evidence in these cases that the defendants have violated that decree.

In 1911, Ramsay was denied a renewal of the solicitor's license previously held and then expired, and in 1913 the renewal of Rankin's license was likewise refused. From that time until the decree above mentioned they were not permitted to place advertising with any association members. The refusal to renew these licenses was put on the ground of a change of policy limiting licenses to those who would solicit billboard advertising exclusively and in furtherance of a policy to reduce in number the licensed solicitors of the association. By being excluded from the business so controlled by the defendants, the plaintiffs found themselves unable to have their posters displayed by any member of the association, and as a result suffered the damages for the recovery of which these suits were brought.

The complaint in each suit was first met by a demurrer, and each demurrer was sustained. Sullivan v. Associated Bill Posters & Distributors of United States (D. C.) 272 F. 323. The complaints were then amended; demurrers were again interposed, sustained, and the judgments affirmed. Ramsay Co. v. Associated Bill Posters (C. C. A.) 271 F. 140. On a writ of error in each case, the Supreme Court subsequently reversed those judgments and held the complaints sufficient.

Ramsay Co. v. Bill Posters' Association, 260 U. S. 501, 43 S. Ct. 167, 168, 67 L. Ed. 368.

Greene & Hurd, of New York City (George F. Hurd, Daniel S. Murphy, and S. Giddings Howd, of New York City, of counsel), for appellants.

Emanuel Harris, of New York City (Nathan Burkan, Sol. A. Rosenblatt, and Emanuel Harris, all of New York City, and Thomas G. Haight, of Jersey City, N. J., of counsel), for appellees.

Before SWAN, CHASE and MACK, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

■ Much of the argument contained in the rather voluminous briefs filed, though ostensibly made on the question of sufficiency of proof, is directed to what has already been decided by the Supreme Court in Ramsay v. Bill Posters, supra. It should be needless to point out that it is idle to ask us now to discuss the sufficiency of these complaints, for the defendants are bound to regard that as established, and so are we. United States Trust Co. v. New Mexico, 183 U. S. 535, 539, 540, 22 S. Ct. 172, 46 L. Ed. 315. What is now open relates to the adequacy of the proof on which the verdicts underlying the judgments were rendered and errors, if any, committed during the trial in the District Court. Not only have the defendants, including Briggs, and Ivan B. Nordhem Company whose nonparticipation in the unlawful combination and conspiracy is especially urged (but see Atlanta v. Chattanooga Foundry & Pipe Works [C. C. A.] 127 F. 23, 64 L. R. A. 721), failed to point out lack of proof in support of a single essential allegation, but a careful inspection of the lengthy record filed discloses that it was impossible for them to have done so. The identical allegations which have already been held sufficient to state a cause of action have been proved so abundantly that we pass without delay to a consideration of the other phases of this appeal with only the additional observation that the decree of 1916 ran against all these defendants and under the Clayton Act (15 USCA § 16) was itself prima facie evidence of their violation of the law. The evidence introduced, far from overcoming the prima facie effect of the decree, strongly tended to support the plaintiffs' allegations.

■ As above stated, no violation of the decree of the District Court for the Northern District of Illinois entered in 1916 was

proved. Error is claimed in the refusal of the court to charge that "the evidence shows that there was no refusal by defendants to accept and post advertising posters for anybody subsequent to July, 1916, and the period subsequent to that date has no bearing on any of the issues in this case and should be dismissed from the minds of the jury." The part of this request relating to the tendency of the evidence as to nonviolation of the 1916 decree was in accordance with the fact, but this was simply part of a request which embodied unsound legal conclusions, and the court could disregard such a request entirely. Texas & Pacific Ry. Co. v. Humble, 181 U. S. 57, 21 S. Ct. 526, 45 L. Ed. 747; Miles v. Lavender (C. C. A.) 10 F.(2d) 450; American Surety Co. v. Blount County Bank (C. C. A.) 30 F.(2d) 882, 884. Whether the harmful effect to the plaintiffs of the illegal acts of the defendants committed before the date of the 1916 decree ended with the entry of that decree or not was primarily a question of fact, and, if there was evidence tending to show that the plaintiffs continued to suffer damages after the decree date because of the previous unlawful acts of the defendants, such damages were recoverable. There was such evidence. The plaintiffs had already lost much business because they were prevented by the defendants from getting their posters displayed. Some of their clients had left them; the confidence of former clients in plaintiffs' ability to get the defendants to accept their posters was not shown to have been restored by the stroke of the pen which signed the decree; the uncertainty as to the absolute finality of the decree in its future effect on the business was not dispelled at least until the appeal taken from it was dismissed six years later in 1922. The decree could not as a matter of law, and especially not in the face of evidence showing the contrary, be held to have done away with all continuing damage directly traceable to the defendants' former unlawful interference.

■ It is also claimed that, even if the defendants are guilty, plaintiff Rankin cannot recover because it is in pari delicto. This question was submitted to the jury under instructions to which no objection was made and which followed correctly the law of Eastman Kodak Co. v. Southern Photo Material Co., 273 U. S. 359, 377, 47 S. Ct. 400, 71 L. Ed. 684. The issue was decided by the jury against the defendants, and we think the jury amply justified in reaching the conclusion that this claim was not supported by the proof. The evidence contained nothing to alter the situation as it appeared in this respect when the opinion in Ramsay Co. v. Bill Posters' Association, supra, was handed down. We quote from the end of that opinion because what is there stated applies with equal force here. "We find no adequate support for the claim that plaintiffs were parties to the combination of which they now complain."

During the trial, the judge made certain remarks now said to constitute reversible error, but no exception to them was taken. No attempt has been made to point out wherein they were prejudicial and no plain error is disclosed which should be noticed of our own motion. Central Supply Co., Inc., v. Carter Clothing Corporation (C. C. A.) 35 F.(2d) 172.

■ In its proof of damages, Rankin was permitted, under objection and exception, to show by the testimony of its treasurer and by a compilation he had made, based on the net profits of the business in 1911 and from his knowledge of business conditions when free of the defendants' unlawful interference, what he considered would have been the normal increase of this plaintiff's business from year to year. He was permitted to estimate on this basis its probable yearly earnings from July, 1913, to June 30, 1918, and to explain how his figures were arrived at. The fact that this amount of the plaintiff's damages could not be expressed in exact figures did not make them speculative. There was no speculation as to the fact of actual damage. Its business had been seriously curtailed. The defendants had caused the damage, and cannot be permitted to escape liability because it is difficult for the plaintiff to express in terms of dollars the damages it has suffered. This evidence, while purely an estimate and introduced as such, was proof of a kind as definite and certain as the subject-matter admitted. It had to do with what was never actually earned because of the defendants' wrongdoing. The witness testified from his knowledge of the business history, made his calculations upon what appears to be a reasonable basis, and the defendants had ample opportunity by cross-examination or the offer of their own evidence on the subject to discredit him and show any fallacy in his reasoning or testimony. Whatever may be said of its weight, and that was entirely for the jury, we have no difficulty with its admissibility. Eastman Kodak Co. v. Southern Photo Material Co., supra, at page 379 of 273 U. S., 47 S. Ct. 400.

■ Because Ramsay did not introduce any estimate of probable future earnings, being

content to leave the matter on proof of earnings, expenses, and net profits before the defendants' unlawful acts, it is said that no damages warranting a recovery have been proved by that plaintiff. Thus we have in this same case, as it happens that two separate actions were tried and are now considered together, defendants taking the position in respect to one plaintiff that it was error to introduce evidence of estimated future earnings because it is too speculative, and the position in respect to the other plaintiff that it was fatal to a recovery not to do so. Had there been no evidence from which damages could be fixed by the jury, of course this plaintiff could not recover. But there was evidence. The financial history of the Ramsay business was in the case. Perhaps the jury was not as competent to analyze that evidence as some financial and business expert might have been, but it could draw its own reasonable conclusions from it. That is what a jury is to do anyway in arriving at the amount of damages in any case. The jury had the data before it, and was left to determine the damages from that in what may be called its raw state. Perhaps the testimony of some one competent to have estimated the business loss resulting from the defendants' acts would have helped, but it was not indispensable. See Straus v. Victor Talking Machine Co. (C. C. A.) 297 F. 791, 802, and Frey & Son v. Welch Grape Juice Co. (C. C. A.) 240 F. 114.

 Rankin recovered as trebled damages $277,329.58, and Ramsay recovered as trebled damages $25,637.09. In the Rankin Case, an attorney's fee of $42,500 was allowed and in the Ramsay Case a fee of $7,500. Both these allowances are attacked as excessive. Testimony was introduced tending to show that $50,000 was a fair and reasonable valuation for the services rendered and the appellants introduced no evidence to the contrary, although counsel for them stated that "between $25,000 and $30,000 was the amount they should be awarded."

It is not easy to decide what is just and reasonable in a matter of this kind, and the judgment of the trial judge who considered the matter with full knowledge of the facts is not lightly to be set aside. No doubt the suggestion that the task of counsel was made easier by the government's prosecution which started in 1912 is correct. Yet a large amount of work and skill was necessary in conducting this litigation in its various phases up to the time the award of fees was made. Substantial judgments were obtained. The

record before us contains 1,453 pages and shows to some extent what work was done and how it was performed before the cases came to this court. In view of all this, we can reach no other conclusion than that the trial judge acted within the bounds of sound discretion in making the allowances as he did. See Montague & Co. v. Lowry, 193 U. S. 38, 24 S. Ct. 307, 48 L. Ed. 608; and Straus v. Victor Talking Machine Co., supra, 297 F. at pages 805, 806.

The judgment in each case is affirmed.