**CAPE COD FOOD PRODUCTS, Inc.**

v.

**NATIONAL CRANBERRY ASS'N et al.**

Civ. A. No. 51–1250.

United States District Court
D. Massachusetts.

March 1, 1954.

James D. St. Clair, Hale & Dorr, Boston, Mass., for plaintiff.

Charles B. Rugg and Henry S. Streeter, Ropes, Gray, Best, Coolidge & Rugg, Boston, Mass., for defendants.

WYZANSKI, District Judge.

The jury having rendered a verdict for plaintiff in the sum of $175,000 single damages, on a complaint alleging violation of Section 2 of the Sherman Act, 15 U.S.C.A. § 2, plaintiff's counsel moves for the assessment of a reasonable attorney's fee pursuant to 15 U.S.C.A. § 15.

The evidence before me bearing upon an attorney's fee is as follows. This is a private anti-trust suit which was not preceded by a public or even another private suit in the same industry. Plaintiff's chief counsel, James D. Saint Clair, Esq., in his thoroughness of preparation, economy of effort, choice of emphasis, quality of examination and cross-examination, presentation of argument, analysis of the law, courtesy to parties, witnesses, opposing counsel, and the Court, and that indefinable distinction which breathes excellence, can stand comparison with any lawyer who has appeared before me in the last dozen years. The success that he achieved, while founded on the merit of plaintiff's case, was by no means inevitable. In hands less gifted and with a lawyer less persuasive to a jury, plaintiff's cause might well have gone a-gley. Here as in earlier cases, plaintiff's counsel has shown that despite his relative youth and his short career at the bar, he is quite capable of holding his own against the most experienced advocates of our profession. With becoming deference to his seniors, but with unflinching courage in examining witnesses, in meeting opposing arguments, and in resisting what he regarded as

unsound rulings from the bench, plaintiff's counsel set a model not likely to be surpassed.

In a statement filed with the court, plaintiff's counsel says that he and other senior partners of his firm devoted 366 hours to the preparation of this case, and their associates devoted 231 hours to this case.

In assaying the foregoing evidence, I have in mind principles laid down in cases directly in point, and in others that are cognate.

In anti-trust cases the fees have often run substantially over one-third of the single damages recovered. Straus v. Victor Talking Machine Co., 2 Cir., 297 F. 791 ($23,894.71 single damages allowed after appeal, attorneys' fees reduced from $35,000 to $30,000); Rankin Co. v. Associated Bill Posters of U. S. Etc., 2 Cir., 42 F.2d 152 (single damages slightly over $101,000, counsel fees $50,000); Emich Motors Corp. v. General Motors Corp., 7 Cir., 181 F.2d 70 ($412,000 single damages, $250,000 counsel fees); American Can Co. v. Bruce's Juices, 5 Cir., 190 F.2d 73 ($60,000 single damages, $40,000 counsel fees); Milwaukee Towne Corp. v. Loew's, Inc., 7 Cir., 190 F.2d 561 ($313,-858.10 single damages, counsel fees reduced from $225,000 to $75,000); Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 8 Cir., 194 F.2d 846 ($375,000 single damages, $100,000 counsel fees). See Homer Clark, The Treble Damage Bonanza: New Doctrines of Damages in Private Antitrust Suits, 52 Michigan Law Review, 363, 411–413. In listing the matter which appears in parenthesis this court has not intended to intimate that the sound method of computing a reasonable fee requires the court to consider only single damages, rather than treble damages. Ordinarily, of course, in so far as the amount of a party's recovery is one of the factors to be taken into account in establishing a fair fee, reference is made to the total amount in issue between the parties, or to the total amount recovered by one of them.

Other relevant cases have arisen under the Federal Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., and Emergency Price Control and Rent Statutes, 50 U.S.C.A.Appendix, §§ 901 et seq., 1881 et seq. Hutchinson v. William C. Barry, Inc., D.C.Mass., 50 F.Supp. 292 (single damages $160.95, counsel fees $100); Aucoin v. Mystic Waste Co., D.C.Mass., 55 F.Supp. 672 ($1,290.17 single damages, counsel fees $300); Gilbert v. Thierry, D.C.Mass., 58 F.Supp. 235 (on actual overcharges totalling $45, counsel fees of $75 allowed); Kalwar v. McKinnon, 1 Cir., 152 F.2d 263 (on actual overcharges totalling $45 counsel fees of $75 in the District Court and an additional $25 in the Court of Appeals).

Under 35 U.S.C.A. § 70, authorizing the assessment of counsel fees in patent litigation, awards of $30,000 in the District Court, and an additional $2,500 in the Court of Appeals were allowed where, disregarding penalties, normal damages of $113,507.50 were recovered. Russell Box Co. v. Grant Paper Box Co., 1 Cir., 203 F.2d 177, affirming Grant Paper Box Co. v. Russell Box Co., D.C.Mass., 106 F.Supp. 616.

In an action for the infringement of copyright where plaintiffs' damages were assessed at $5,000, though defendant realized profits of only $890.16, counsel fees awarded pursuant to 17 U.S.C.A. § 116 were $2,000 in the District Court, and an additional $500 in the Court of Appeals. F. W. Woolworth Co. v. Contemporary Arts, 1 Cir., 193 F.2d 162.

Reference was made at the bar to the fact that under statutes permitting Indians to sue the United States, Congress customarily sets a maximum for attorney's allowances at 10% of the recovery. Such situations, however, reflect peculiar tenderness toward the United States as defendant, and wards of the United States as plaintiffs. Moreover these situations indicate that

when Congress wished to limit awards mathematically, it knew how to do so. And finally if a 10% figure were to be used it should be applied to the total damages recovered, that is $525,000.

The limitation of $25 an hour which is said to be applied to senior counsel in cases before administrative tribunals like the Securities Exchange Commission and the Interstate Commerce Commission must be read in the light of the regulatory system and the type of public interest there involved.

Likewise, amounts allowed to trustees, receivers, counsel, and committees in corporate reorganization matters reflect the position of the applicants for fees as court appointees, serving the public interest and often allegedly acting as representatives of persons who will usually be called on to make substantial financial sacrifices as a consequence of the reorganization. See Hutchinson v. William C. Barry, Inc., D.C.Mass., 50 F.Supp. 292, 298; Boynton v. Tarbell, 272 Mass. 142, 172 N.E. 340.

The analogies cited in the last six paragraphs, while they have some pertinence, almost all require less variety and rarity of skill than the instant case demanded and received. It is doubtful whether any type of legal work requires a higher degree of professional competence and native ability than the presentation to a jury of complicated economic questions. This is especially true where the parties are not public agencies, but private persons having no unusual investigatory or other aids. Absence of such investigatory assistance is a special handicap where, as here, plaintiff's counsel did not have the benefit of previous litigation by the United States, resulting in a judgment which constitutes for injured individuals, prima facie evidence, in accordance with 15 U.S.C.A. § 16.

In Hutchinson, I explained at length what seemed to me the relevant policy considerations which must govern awards of counsel fees in this type of case.

■ My conclusion was that a losing defendant must pay what it would be reasonable for counsel to charge a victorious plaintiff. The rate is the free market price, the figure which a willing, successful client would pay a willing, successful lawyer. Sometimes the figure may seem high. But so far as price is determined by unique excellence and by social usefulness, the advocate is especially worthy of large recompense. His brevity may reflect extraordinary gifts and thus in itself be indicative of merit. See Whistler v. Ruskin, cited in Pennell, The Art of Whistler (Modern Library, N.Y.1928), p. 64. And his simplicity of presentation may be a proof not of the problem's lack of difficulty, but rather of his unmatched native quality. See Giotto (G. Vasari, Eminent Painters, Sculptors, and Architects, Blashfield-Hopkins, E.D.N.Y.1926 vol. 1, p. 61).

Unless excellence in the trial lawyer is properly recompensed, the best men will not spend their time in court, and thus there will dry up the most essential sources of an independent bar.

■ Only two countervailing arguments have been advanced (implicitly rather than explicitly, to be sure) by opposing counsel in the case at bar. The first is that the time spent by plaintiff's counsel in preparation amounted to a total of only 597 hours, and second that plaintiff's chief counsel has been at the bar only slightly less than seven years. But the very economy of counsel's methods and his youth are perhaps the most significant hall marks of an outstanding talent.

I allow, in addition to disbursements of $856.85, a reasonable attorney's fee of $35,000 without prejudice to these being increased by further services in appellate courts.