**NOERR MOTOR FREIGHT, Inc., et al.**

v.

**EASTERN RAILROAD PRESIDENTS CONFERENCE et al.**

**Civ. A. No. 14715.**

United States District Court
E. D. Pennsylvania.

July 22, 1958.

See, also, 19 F.R.D. 146; 155 F. Supp. 768.

Dilworth, Paxson, Kalish, Kohn & Dilks, Philadelphia, Pa., for plaintiffs.

Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for Eastern Railroad Presidents Conference.

Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., Hughes, Hubbard, Blair & Reed, New York City, for Carl Byoir & Associates, Inc.

Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., for Pennsylvania R. Co., M. W. Clement and Walter S. Franklin.

Harold B. Bornemann, Philadelphia, Pa., for Lehigh & N. E. R. R. Co.

Dennis P. Donovan, New York City, for Canadian Nat. Railways.

Drinker, Biddle & Reath, Philadelphia, Pa., for Central R. R. Co. of N. J., Central R. R. Co. of Pa., Norfolk & W. Ry. Co., and Western Maryland Ry.

Carl E. Glock, Pittsburgh, Pa., and James B. Anderson, Philadelphia, Pa., for Fred W. Okie and Union R. R. Co.

Guckes, Shrader & Burtt, Philadelphia, Pa., for Baltimore and Ohio R. R. Co.

Morgan, Lewis & Bockius, Philadelphia, Pa., for Chesapeake & O. Ry. Co., Delaware, L. & W. R. R. Co., Erie R. R. Co., Lehigh & H. R. Ry. Co., New York, C. & St. L. R. R. Co., The Reading Co., R. W. Brown and Joseph A. Fisher.

Daniel Mungall, Jr., Philadelphia, Pa., for Boston & M. R. R.

Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for Canadian Pac. Ry. Co., The Delaware & H. R. R. Corp., Maine Cent. R. R. Co., New York, N. H. & H. R. R. Co.

Myers, McVeigh, Mansfield & O'Brien, Philadelphia, Pa., for New York Cent. R. R. Co.

T. W. Pomeroy, Jr., Pittsburgh, Pa., and Paul Maloney, Philadelphia, Pa., for Pittsburgh & W. V. Ry. Co. and Charles J. Graham.

Saul, Ewing, Remick & Saul, Philadelphia, Pa., for Lehigh Valley R. R. Co.

White, Williams & Scott, Philadelphia, Pa., for New York, O. & W. Ry., and Lewis D. Freeman.

CLARY, District Judge.

This case is presently before the Court for entry of final judgment. The problems presented are (1) what in-

junctive relief shall be granted; (2) a proper assessment of damages, and (3) fixing a reasonable attorney's fee to be awarded the successful litigants, the plaintiffs. Considering point 2 first, there is no doubt, as is set forth in the body of the Opinion in this case handed down on October 10, 1957 (D.C., 155 F. Supp. 768), that plaintiff Pennsylvania Motor Truck Association (PMTA) has sustained damages as a result of the illegal conspiracy found in this case. As in nearly every case involving violation of the antitrust statutes, there is, and the Court is fully aware of the problem involved, great difficulty in determining the exact amount of damages sustained by the plaintiff association. Bigelow v. RKO Radio Pictures, 1946, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652; Story Parchment Co. v. Paterson Parchment Paper Co., 1931, 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544; Eastman Kodak Co. of New York v. Southern Photo Materials Co., 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684. The Court is also fully cognizant that damages may not be based upon sheer conjecture. Story Parchment Co. v. Paterson Parchment Paper Co., supra; Kobe, Inc., v. Dempsey Pump Co., 10 Cir., 1952, 198 F.2d 416, certiorari denied 1952, 344 U.S. 837, 73 S.Ct. 46, 97 L.Ed. 651. However, the fact that there is difficulty in determining an exact amount from the proofs adduced is a risk of which the wrongdoer defendants may not complain. The Court, under the Eastman Kodak Co.; Story Parchment Company and Bigelow cases, is entitled to award damages based upon reasonable inferences to be drawn from the testimony adduced. As against that there is the cautionary statement in Homewood Theatre, Inc., v. Loew's, Inc., D.C. Minn.1952, 110 F.Supp. 398, 412, that "the purpose of the Sherman Act and the protection granted therein to those who have been damaged by wrongdoers in violation thereof, should not be thwarted by making the act a haven for those who attempt to transform their actual damage into a fortuitous windfall". With these principles in mind we proceed to an examination of the claimed damages on the part of the Pennsylvania Motor Truck Association (PMTA).

The claim of the plaintiff Pennsylvania Motor Truck Association (PMTA) is based principally upon the total of all monies it paid to Allied Public Relations Associates, Inc. from May of 1952 to 1957. Included in these charges are not only its public relation activities but all expenditures in connection with the present suit. Certain other direct payments to individuals, printing houses and other organizations are also included, the details of which need not be outlined. Also claimed are a series of direct payments by PMTA for public relation purposes from 1949 to 1957 independently of the Allied charges and based upon the increase in PMTA's direct public relations program over and above the average of its direct expenditure for that purpose for the years 1942 to 1949, the date when the Court found the conspiracy was formed. These sums aggregate $866,-482.62 which, if allowed in full, would mean treble damages in the amount of $2,599,447.86.

The Court in its opinion, particularly in reference to the counterclaim, has characterized certain of the activities of the truckers as not proving a conspiracy in violation of the Sherman and Clayton Acts, 15 U.S.C.A. §§ 1–7, 15 note, 12 et seq. but, on the contrary, has characterized some of them as falling within the realm of fair competition in the light of the competitive situation then existing. The Court further stated categorically that such activities did not in and of themselves establish a conspiracy on the part of the truckers against the railroads. Because of these statements in the opinion, counsel for the plaintiffs have argued that all costs outlined above are reimbursable in a treble amount. This conclusion, of course, does not follow and the Court rejects the imposition of damages based upon that assumption. While many of these factors were not found to be sufficient to convince the Court of the existence of a truckers' conspiracy, it does not follow as a matter

of course that the Court is obligated to find that they were defensive measures. There were many activities of the truckers and Allied which had no connection with the present suit, were extremely beneficial to the truckers, and which could not possibly be classified as appropriate defensive measures of the conspiracy found to be existing in this case.

Another premise upon which counsel for the plaintiffs have argued that they should be awarded damages is the finding of the Trial Judge in the opinion that he believed the testimony of Noerr and Charnay that the purpose for the hiring of Allied was primarily to make an investigation of the activities of the railroads and, if sufficient evidence was adduced, to institute a law suit to compel cessation of illegal activities. The Court reiterates its finding in that regard but also finds that the activities of Charnay went far and beyond purely defensive measures. Charnay in the years of 1953 and 1955 expended large sums of money for public relation activities on behalf of the truckers over and beyond amounts necessary to counteract the previous activities of the railroad-Byoir conspiracy and for many purposes entirely disassociated with the railroad-truckers' fight. Insofar as these independent activities can be segregated, no allowance will be made therefor. Where the activities were in the main directed at defensive measures, even though there may be some incidental benefit to the truckers along other lines and cannot be separated, allowance will be made therefor. Examples of the type of activities that will not be allowed are as follows: Reimbursement to Allied for legal expenses without showing the necessity therefor and some connection with the obligations of Allied to PMTA. The only suggestion made as to the necessity for these expenses is that Charnay consulted certain lawyers not connected with the present litigation as to whether there might be a right of action under the anti-trust laws. Expenses of this nature have never been held to constitute part of damages awarded in antitrust actions.

Another type of expense which has been attempted to be recovered here is that of a fund-raising organization hired to solicit funds from truckers throughout the country in support of the present law suit. Its compensation was based upon a percentage of funds solicited. The Court sees no basis for an allowance of this expenditure as damages in an antitrust action.

The attention of the Court has likewise been called to certain expense accounts, particularly of Charnay, head of Allied, when he attended conventions of the Teamsters' Union; on one occasion to help in re-election of Dave Beck as head of the Teamsters' Union in Los Angeles, and another time in Miami, Florida, to solicit teamsters' help for PMTA in the prosecution of the present law suit. An analysis of these two accounts indicates a total lack of connection with the present suit as to the Los Angeles trip. Insofar as the Miami trip was concerned, it shows an expenditure in excess of $4,000 within a relatively few days; also that the beneficiaries of those expenditures were officers and members of PMTA. That type of expenditure will also be disregarded in a calculation of damages.

The record in this case clearly indicates that concurrent with the institution of the present action the railroads and Byoir drastically reduced their scope of public relations operation. That is not to say that they ceased all activities looking toward the ultimate objective. The record indicates that close contact was kept by the railroad and Byoir with those individuals and organizations which had theretofore supported them and their point of view. On the other hand, the expenses of Allied in publicizing what has come to be known in this case as the Green affidavit and the facts elicited in depositions taken on behalf of the plaintiffs in this case reached extreme proportions, the cost of which cannot by any stretch of the imagination be classified as defensive measures. Nevertheless, the plaintiffs herein attempt to recover all of these expenses, trebled, on

the ground that the newspapers of the United States and press services were either not competent or might fail to give the facts the press coverage they really deserved. Plaintiffs argue that because the railroads were in a quiescent stage, but able and willing to resume activities should they prevail in this action, the activities of Allied and the expenses therefor should be considered as proper defensive costs. In making this assertion plaintiffs entirely ignore the fact that one of the prayers, and one of the most important prayers for relief in the complaint, was injunctive relief. The Court has found that they are entitled to such relief and it is being granted. There was, insofar as this case is concerned, no necessity whatever for the expenditure of fantastically high sums in publicizing this law suit. In effect, the plaintiffs have attempted to create monetary damages based upon the threat of a continuance of a course of conduct. The threat of such continuance is properly a subject for injunctive relief but any claim for monetary damages based thereon must be denied as being entirely too remote. After a full consideration of all the evidence the Court is satisfied that PMTA has suffered single damages in the sum of $217,358.

With respect to the problem as to what injunctive relief should be granted, the defendants question the power of the Court on constitutional grounds to enjoin the activities which they carried on in this case. See Noerr Motor Freight, Inc., v. Eastern Railroad Presidents Conference, D.C.E.D.Pa.1957, 155 F.Supp. 768, 820. The defenses there mentioned have been again advanced. Particular emphasis has been laid on deprivation of the constitutional rights of freedom of speech, freedom to assemble and freedom to petition the legislature. Without further extended discussion the Court rejects the arguments made on the ground that in making them the defendants have ignored the fact finding of the Court that a conspiracy in restraint of trade actually existed. "Equity has power to eradicate the evils of a con-

demned scheme by prohibition of the use of admittedly valid parts of an invalid whole". United States v. Bausch & Lomb Optical Co., 1944, 321 U.S. 707, 724, 64 S.Ct. 805, 814, 88 L.Ed. 1024; Ethyl Gasoline Corp. v. United States, 1940, 309 U.S. 436, 461, 60 S.Ct. 618, 84 L.Ed. 852.

It is the duty of the Court to frame a decree which will suppress the unlawful practices found to exist and to take such reasonable measures as will preclude their revival. Ethyl Gasoline Corp. v. United States, supra, 309 U.S. at page 461, 60 S.Ct. at page 627; United States v. Crescent Amusement Co., 1944, 323 U.S. 173, 188, 65 S.Ct. 254, 89 L.Ed. 160. The injunctive relief in this case will, therefore, be designed to restrict the unlawful practices found to exist heretofore and to prevent future repetition of like nature.

The final question to be decided is the amount of counsel fees. Such allowance is authorized by Title 15 U.S. C.A. § 15. The general rule is that the fixing of attorney's fees is within the discretion of the trial court reasonably exercised and that a court of review will only interfere where there is an abuse of that discretion. W. W. Montague & Co. v. Lowry, 1904, 193 U.S. 38, 24 S.Ct. 307, 48 L.Ed. 608; Connecticut Importing Co. v. Frankfort Distilleries, 2 Cir., 1939, 101 F.2d 79; Milwaukee Towne Corp. v. Loew's, Inc., 7 Cir., 1951, 190 F.2d 561.

The reasonableness of an attorney's fee can only be determined with reference to a particular case. What is reasonable under one set of circumstances may be entirely unreasonable under another. A review of the cases indicates some of the factors considered by the courts in making an award of a "reasonable attorney's fee". These include: (1) whether plaintiff's counsel had the benefit of a prior judgment or decree in a case brought by the government, Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 8 Cir., 1952, 194 F.2d 846, 858–859; William H. Rankin Co. v. Associated Bill Posters of

United States, 2 Cir., 1930, 42 F.2d 152, 156; Bordonaro Bros. Theatres v. Paramount Pictures, D.C.W.D.N.Y.1953, 113 F.Supp. 196, 197; (2) the standing of counsel at the bar—both counsel receiving the award and opposing counsel, Straus v. Victor Talking Machine Co., 2 Cir., 1924, 297 F. 791, 806; Darden v. Besser, D.C.E.D.Mich.1956, 147 F.Supp. 376, 382; Webster Motor Car Co. v. Packard Motor Car Co., D.C.D.C., 166 F.Supp. 865 (Holtzoff, J.); Cape Cod Food Products v. National Cranberry Ass'n, D.C.Mass.1954, 119 F.Supp. 242–244, and Bordonaro Bros. Theatres v. Paramount Pictures, supra, 113 F.Supp. at page 197. Contra Milwaukee Towne Corp. v. Loew's, Inc., 7 Cir., 1951, 190 F.2d 561, 570–571; (3) time and labor spent, Darden v. Besser, supra, 147 F.Supp. at page 382; (4) magnitude and complexity of the litigation, Darden v. Besser, supra at page 382; Webster Motor Car Co. v. Packard Motor Car Co., supra. Contra Milwaukee Towne Corp. v. Loew's, Inc., supra, 190 F.2d at pages 570–571; (5) responsibility undertaken, Darden v. Besser, supra, 147 F.Supp. at page 382; (6) the amount recovered, Cape Cod Food Products v. National Cranberry Ass'n, supra, 119 F.Supp. at pages 242–244. Contra Milwaukee Towne Corp. v. Loew's, Inc., supra, 190 F.2d at page 571, and (7) the knowledge the Court has of the conferences, arguments that were presented and of work shown by the record to have been done by attorneys for the plaintiffs prior to trial, Appelbaum and Sims v. Paramount Pictures, Inc., 1950–1951, CCH Trade Cases par. 62,944 (D.C.S.D. Miss.1951).

In addition to all the factors mentioned above two other tests have been proposed by equally eminent jurists for use by courts in carrying out the duty imposed on them by the statute. These two tests merit further discussion.

In the case of Cape Cod Food Products v. National Cranberry Ass'n, supra, 119 F.Supp. at page 244, Judge Wyzanski determined that the reasonable attorney's fee contemplated in 15 U.S.C.A. § 15 is "what it would be reasonable for counsel to charge a victorious plaintiff. The rate is the free market price, the figure which a willing, successful client would pay a willing, successful lawyer".

The other test was proposed by Judge Holtzoff in his unreported opinion in Webster Motor Car Co. v. Packard Motor Car Co., supra. In that case Judge Holtzoff stated:

"Although there are some expressions to the contrary, it is the view of this Court that in such a case as this, it is not the function of the Court to fix the fee that counsel should charge his client, and then assess that against the defendant. My conception is that it is the duty of the Court to determine what contribution shall be made by the defendant toward the fees of plaintiff's counsel. I say that lest there be any misunderstanding. It is not my intention to determine or express an opinion or even an intimation how much plaintiffs' counsel should charge his client. I might say in passing that in my opinion the amount that the plaintiffs' counsel is entitled to charge his client is much larger than the amount I intend to award as the amount to be paid by the defendants."

In the case of Milwaukee Towne Corp. v. Loew's, Inc., supra, 190 F.2d at page 570, Chief Judge Major stated flatly that any agreement between plaintiff and his counsel regarding compensation is "wholly immaterial to the issue before the court", i. e., what is a reasonable attorney's fee? The Court thus concludes that any agreement between a willing successful client and a willing successful lawyer as to compensation is not determinative of what is a "reasonable attorney's fee" under 15 U.S.C.A. § 15.

The Court also is not convinced of the correctness of Judge Holtzoff's conception that it is the duty of the court in making its award of attorney's fees under 15 U.S.C.A. § 15 "to determine what contribution shall be

made by the defendant *toward* the fees of plaintiff's counsel" (italics supplied). While the Court feels that neither of these tests is the proper one to be applied under 15 U.S.C.A. § 15, the Court is of the opinion that they do represent the poles at some point between which the true standard lies. Any attempt to fix exactly at what point between these poles the true test lies would be fruitless. To further attempt to ascertain the intent of Congress in providing for the award of a "reasonable" attorney's fee would be futile and serve only to confuse the issue.

It has been apparent in a review of the cases respecting the award of counsel fees in antitrust actions that there has developed a percentage theory of compensation based upon the award of single damages. It is readily understandable that such a procedure could be entirely proper under the circumstances of a particular case. However, in the instant case, we have the unusual situation where the plaintiffs in order to expedite the trial of the case and to obtain a more prompt determination of the rights and liabilities of the parties have stipulated that they would not claim certain damages to which they might otherwise be entitled. This Stipulation greatly shortened the trial of the case. To adopt a percentage approach would, therefore, do a grave injustice to the plaintiffs. Counsel for the plaintiffs in this case, prominent and experienced members of the Philadelphia Bar, have spent over forty-six hundred hours in the preparation and trial of this case. Any award based upon a moderate percentage of the single damages would, therefore, be entirely inadequate to constitute a reasonable attorney's fee.

The Court is of the opinion that the test to be applied may be stated quite simply—what, in the opinion of the Trial Judge, after considering all the factors in the case (including but not limited to those outlined above), would be a reasonable charge for the services of plaintiffs' counsel? The statement is simple; application is very difficult. However, after a consideration of all the factors in the case, the arguments and briefs of counsel, the Court awards $200,000 as a reasonable attorneys' fee.

██ It has been brought to the attention of the Court that under the decision of Dextone Co. v. Building Trades Council of Westchester County, 2 Cir., 1932, 60 F.2d 47, since this action sounds in tort and is for the vindication of a private, not a public right, in a civil, not a criminal proceeding, a joint rather than a several judgment must be entered without apportionment of damages among the respective parties. Such a joint judgment will be entered in this case.

A formal final decree will be filed concurrently herewith.

### Final Decree

This cause having been tried before the Court without a jury, the Court having determined upon consideration of the record that the plaintiffs are entitled to damages and injunctive relief against the Eastern Railroad Presidents Conference and all corporate defendants, and the Court having filed its Opinion to that effect herein on October 10, 1957;

Now, Therefore, after hearing plaintiffs and defendants by their attorneys, it is hereby

Ordered, Adjudged and Decreed as follows, as to

### Injunctive Relief

#### I

(A) "Plaintiffs" means the following parties plaintiff, their successors and assigns:

> Noerr Motor Freight, Inc.
> Kramer Bros. Freight Lines, Inc.
> McLean Trucking Company
> Lansdale Transportation Co., Inc.
> T. M. Zimmerman Company
> W. I. Womeldorf & Sons Company
> Rodgers Motor Lines, Inc.
> Akers Motor Lines, Inc.
> Keystone Lawrence Transfer & Storage Company
> W. J. McCormick Truck Transportation

Martin Brothers
Pennsylvania Transfer Company
F. W. Lusk Transfer Company
Davidson Transfer & Storage Company
Suwak Trucking Company
C. W. Dillie
A. W. Bauman, Jr. Trucking Company
Martsolf Bros.
Spector Motor Service, Inc.
G. C. Braden Trucking Company
Edward G. Horn Trucking Co.
Seaboard Tank Lines, Inc.
Friedman's Express, Inc.
Karn's Transfer, Inc.
Lombard Bros. Incorporated
Lester C. Newton Trucking Company
Pennsylvania Motor Truck Association (PMTA),

Plaintiffs

D. F. Bast
Ed. Chadderton Trucking
Cooper-Jarrett, Inc.
Eastern Freight-Ways, Inc.
Fowler & Williams, Inc.
William F. Crossett, Inc.
Fischbach Trucking Co.
Hall's Motor Transit Co.
Mushroom Transportation Co., Inc.
Miller Motor Express, Inc.
Yale Transport Corporation
Daily Motor Express
McCullough Transfer Co.
York Transportation Co.,

Intervening Plaintiffs

Other members of plaintiff PMTA engaged in long-haul trucking

(B) "Defendants" means the following parties defendant, their successors and assigns:

Eastern Railroad Presidents Conference
Pennsylvania Railroad Company
New York Central Railroad Company
Chesapeake & Ohio Railway Company
Norfolk & Western Railway Company
Baltimore & Ohio Railroad Company
Reading Company

New York, New Haven & Hartford Railroad Co.
Lehigh Valley Railroad Company
Lehigh & New England Railroad Company
Delaware, Lackawanna & Western Railroad Co.
Delaware & Hudson Railroad
Erie Railroad Company
Western Maryland Railway
Pittsburgh & West Virginia Railway
New York, Chicago & St. Louis Railroad Co.
Boston & Maine Railroad
Central Railroad Company of New Jersey
Central Railroad Company of Pennsylvania
Maine Central Railroad Company
New York, Ontario & Western Railway
Lehigh & Hudson River Railroad
Union Railroad Company (Pittsburgh)
Canadian Pacific Railway Company
Canadian National Railways
Carl Byoir & Associates, Inc.,

Defendants

(C) "Person" means any individual, corporation, partnership, association, or other business or legal entity.

## II

The provisions of this Final Injunction applicable to any defendant shall apply to such defendant, its officers, agents, servants, employees and attorneys, and to all other persons acting or claiming to act under, through, or for such defendant, who shall have received actual notice of this Final Injunction by personal service or otherwise.

## III

Defendants have violated Sections 1 and 2 of the Act of Congress of July 2, 1890, 15 U.S.C.A. §§ 1 and 2, entitled "An act to protect trade and commerce against unlawful restraints and monopolies", commonly known as the Sherman Act. Said violations have consisted of defendants' engaging in an unlawful combination and conspiracy in unreasonable restraint of trade and commerce

among the several states and in an unlawful combination and conspiracy to monopolize trade and commerce among the several states, with the intent and object of substantially lessening competition in and monopolizing the long-haul transportation of freight, to the irreparable injury of the public and of the plaintiffs, whose business defendants intended to restrain and restrict to the greatest extent possible, with the ultimate object of driving them out of the long-haul transportation industry. Defendants have sought to achieve this object primarily by campaigns of vilification and harassment designed to destroy the business good will of the long-haul truckers, including plaintiffs, and to cause to be imposed upon them burdensome governmental restrictions and taxes. Defendants have concealed their part in instigating and supporting such campaigns.

## IV

(A) Defendants are jointly and severally enjoined and restrained from combining or conspiring with the intent and object of restraining, restricting, limiting or preventing the existence, growth, development, or expansion of the business of plaintiffs, or competition by plaintiffs with defendants, or any of them, in the long-haul transportation of freight, by directly or indirectly doing or causing to be done any of the following acts:

(1) Seeking to create resentment or hostility to plaintiffs in the minds of the general public.

(2) Seeking to create resentment or hostility to plaintiffs in the minds of those persons who utilize or may utilize the services of plaintiffs' trucks and in such a manner as to interfere with business relations between shippers and plaintiffs.

(3) Seeking to create resentment or hostility to plaintiffs in the minds of legislators, law enforcement officers, or other public officials or members of any branch of government.

(4) Publishing or causing the publication or dissemination of false, defamatory or derogatory material with regard to plaintiffs or their business.

(5) Instigating, preparing, composing, publishing, producing, disseminating, paying for or subsidizing any release, article, report, statistics or other publication, or any motion picture, radio or television presentation, or any other material relating to plaintiffs or their business without disclosing to the reader or viewer that it has been instigated, prepared, composed, published, disseminated, produced, paid for or subsidized by or on behalf of defendants.

(6) Seeking out or creating organizations apparently independent of defendants to carry out any activity prohibited by this Final Injunction without publicly disclosing the relationship between defendants and such organizations.

(7) Employing or contracting with any public relations firm or similar organization to carry out or cause to be carried out any activity prohibited by this Final Injunction.

(8) Making payments, whether by way of salary, expenses, or of any other nature, to any official, officer, employee or consultant of any governmental, public or private body or organization to carry out, in the name of such person, governmental, public or private body or organization, any activity prohibited by this Final Injunction.

(9) Sponsoring, instigating or supporting any legislation for the enactment of ton-mile, weight-distance, highway or other taxes of any kind to be levied on plaintiffs or their business, or weight, size or other truck limitations, or opposing legislation repealing such existing taxes or truck limitations, unless such opposition be openly and publicly made in the name of the defendants or any of them.

(B) Activities affecting plaintiffs prohibited herein in this Paragraph IV shall be deemed to include (1) those activities

specifically directed against plaintiffs by name, and (2) those generally directed against long-haul truckers as a group or against other specific persons in the long-haul trucking business in so far as they affect plaintiffs because they affect the group (long-haul truckers) of which plaintiffs are a part.

## V

Nothing contained in this Final Injunction shall be construed to prohibit defendants from seeking to change or improve their own facilities, services or rates to make such facilities, services or rates more attractive to shippers, nor from seeking legislative, administrative or other governmental benefits for themselves, as distinguished from imposing burdens on plaintiffs. Nor shall anything contained in this Final Injunction be construed to prohibit defendants from appearing before any legislative, administrative or other governmental body to point out the effect upon the railroad industry of the enactment of any legislation or administrative rulings which may be designed to aid the plaintiffs, but which would adversely affect the defendants.

## VI

Jurisdiction of this cause is retained for the purpose of enabling any party in interest to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this injunction, for the purpose of the enforcement of compliance therewith and for the punishment of violations thereof.

## VII

It is hereby Further Ordered, Adjudged and Decreed as to

### Damages

that judgment be entered in favor of plaintiff Pennsylvania Motor Truck Association (PMTA) and against all the defendants, jointly and severally, in the amount of $652,074 (single damages $217,358—trebled, as required by statute).

Further, that judgment be entered in favor of all the named plaintiffs in Paragraph I(A) of this Final Decree, other than Pennsylvania Motor Truck Association (PMTA), and against all the defendants, jointly and severally, in the amount of eighteen cents (18¢) each (nominal damages of six cents (6¢) each—trebled, as required by statute).

## VIII

It is hereby also Further Ordered, Adjudged and Decreed, as to

### Counsel Fee

that the defendants pay to plaintiff Pennsylvania Motor Truck Association (PMTA) as a reasonable counsel fee, under the provisions of Section 15, Title 15 U.S.C.A., the sum of $200,000.