A. C. BECKEN CO., an Illinois corporation, Plaintiff-Appellant,

v.

GEMEX CORPORATION, a New Jersey corporation, Defendant-Appellee.

No. 12656.

United States Court of Appeals
Seventh Circuit.

Nov. 24, 1959.

Rehearing Denied Dec. 30, 1959.

1

**2**

Frederick W. Potter, Dixon, Morse, Knouff, Potter & Holmes, Edward P. Morse, Chicago, Ill., for plaintiff-appellant.

Edward A. Haight, William J. Marshall, Jr., Chicago, Ill., for defendant-appellee.

Before DUFFY, SCHNACKENBERG and PARKINSON,[1] Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Plaintiff, A. C. Becken Co., an Illinois corporation, appeals from an adverse judgment entered in the district court in plaintiff's action for treble damages brought under § 1 of the Sherman Act,[2]

following a trial by the court without a jury. Defendant, The Gemex Corporation, a New Jersey corporation, is a manufacturer of watch bands, distributed by it nationally through wholesalers, including plaintiff (until August 2, 1956) and the latter's two principal competitors, The Ball Company and Stein and Ellbogen Company.

1. According to plaintiff's theory, defendant attempted to force plaintiff to enter into a price-fixing agreement for the establishment and maintenance between wholesalers of minimum resale prices on Gemex products and also on products competitive to the Gemex line. Plaintiff contends that defendant had already exacted such an agreement from plaintiff's competitors and threatened to drop plaintiff as a distributor unless it joined this price-fixing agreement. Plaintiff asserts that, when it refused to do so, defendant carried out its threat to "drop" plaintiff as a Gemex distributor, which resulted in losses to plaintiff for which it is entitled to treble damages.

§ 1 of the Sherman Act provides:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal [3] * * *."

The trial was on complaint [4] and answer. The court heard the evidence of

1. While Judge Parkinson participated in the hearing of oral arguments and a conference of the division judges above-named, he was not present at the time of, and did not participate in, the adoption of this opinion.

2. 15 U.S.C.A. § 1.

[3] 15 U.S.C.A. § 1.

4. Plaintiff's complaint charged that defendant—
attempted to engage in a wrongful and unlawful combination and conspiracy,
(a) To prevent and restrict the sale and distribution of Gemex's products, by reason of its refusal, for the unlawful reason stated by Gemex as aforesaid, to sell its products to Becken;

(b) To prevent and restrict the sale and distribution of products manufactured and sold by Gemex's competitors;
(c) To, and did [sic], discriminate against a wholesale distributor, to-wit, Becken, who would not combine and conspire with Gemex to price competitors' lines as directed and dictated by Gemex;
(d) To force and compel Becken to enter into a contract or agreement providing for the establishment and maintenance between wholesalers of minimum resale prices on products competitive to the Gemex line; and
(e) To force and compel Becken to enter into a contract or agreement providing for the establishment and maintenance of minimum resale prices between persons, firms or corporations in compe-

the parties, made findings of fact and conclusions of law, and entered judgment, dismissing the action with prejudice. Finding 7 is as follows:

> Defendant's refusal to sell was not the result of any combination, conspiracy, or attempt to combine and conspire by defendant and anyone.

Here is defendant's contention:

> "The defendant, being a manufacturer, may announce to its distributors in advance the circumstances under which it will or will not sell to a given distributor. Such an announcement does not in any way amount to coercion and certainly, if done on a unilateral basis, does not constitute an attempt to conspire, whether in regard to fixing prices, maintaining quality, protecting trade names or trademarks, or any of the many aspects of commercial trade. A merchant or a manufacturer, absent any attempt to monopolize or restrain trade, may exercise discretion as to whom it will sell its products and may refuse to sell for reasons sufficient to itself."

The evidence clearly establishes the following facts:

Tower, defendant's representative, on August 1, 1956, visited plaintiff's office and told its vice-president Bohlander that plaintiff would be expected to sell lines competitive to defendant's lines at manufacturer-suggested prices. On the following day, Swartman, defendant's sales manager, and Tower talked to president Clark and others, of plaintiff, in the latter's office. Tower stated that "it is the philosophy of our company" that to be a Gemex distributor, plaintiff would have to sell competing lines of watch bracelets at prices suggested by manufacturers. Tower also said that he had talked to Stein & Ellbogen Company and The Ball Company, competitors of plaintiff, and, when asked "how he knew that they would uphold, or how they would stop

doing this, and he said they had shook hands over it. And he said, 'That is good enough for me'." After further discussion Bohlander suggested that

> " * * * if they would not allow us to sell the line through the salesman, that they at least allow us to show the line in our catalog."

He also stated that—

> " * * * at that point Mr. Tower stood up and he said, 'Well,' he said, 'we are at an impasse. This is it.'

> "And Mr. Swartman said, 'Well,' * * * 'it would seem to me that there is a moral obligation of some kind here, and that we ought to take back the sample lines,' * * *."

Defendant's answer admits that it advised plaintiff on August 2, 1956 that it would no longer sell its products to plaintiff.

The law recognizes that a manufacturer, in the battle for business, has a right to sell to whom he pleases. It follows that he has a right to stop dealing with a dealer because he thinks the dealer is acting unfairly in trying to undermine his trade. United States v. Colgate & Co., 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992. He is, however, limited to a legitimate use of this weapon. The right to stop dealing is neither absolute nor exempt from regulation. Lorain Journal Co. v. United States, 342 U.S. 143, 155, 72 S.Ct. 181, 96 L.Ed. 162; Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L. Ed. 1277. In the latter case the court said 345 U.S. at page 625, 73 S.Ct. at page 889:

> " * * * If accompanied by unlawful conduct or agreement, or conceived in monopolistic purpose or market control, even individual sellers' refusals to deal have transgressed the Act. * * *"

A wrench can be used to turn bolts and nuts. It can also be used to assault a

---

tition with each other; and that such acts have unreasonably restrained, do unreasonably restrain, and will continue unreasonably to restrain trade and commerce in violation of the anti-trust laws of the United States of America above cited.

person in a robbery. Like a wrench, a manufacturer's right to stop selling to a wholesaler can be used legitimately; but it *may not* be used to accomplish an unlawful purpose. In the case at bar, the clearly established facts show a plan of operation adopted by defendant, the essential purpose of which was to limit the sale of its products to wholesalers who would agree not to sell below prices stipulated by defendant. Such an agreement is in violation of § 1 of the Sherman Act. The established facts also show that the refusal to continue plaintiff as a wholesaler of defendant's products was solely because plaintiff would not sell those products according to defendant's existing illegal plan of doing business in violation of § 1. Plaintiff was not rejected as a customer by defendant because of any other reason. It follows that the facts alleged and established by the evidence state a cause of action under § 1 of that Act. Findings of fact by the district court, inconsistent with these views, are clearly erroneous, under rule 52(a).[5]

In Federal Trade Commission v. Beech-Nut Packing Co., 257 U.S. 441, at page 454, 42 S.Ct. 150, 154, 66 L.Ed. 307 there was involved a system of merchandising which the court said,

"* * * goes far beyond the simple refusal to sell goods to persons who will not sell at stated prices, which in the Colgate case was held to be within the legal right of the producer.

"The system here disclosed necessarily constitutes a scheme which restrains the natural flow of commerce and the freedom of competition in the channels of interstate trade which it has been the purpose of all the anti-trust acts to maintain. In its practical operation it necessarily constrains the trader, if he would have the products of the Beech-Nut Company, to maintain the prices 'suggested' by it. * * *"

From what we have said, it is obvious that the district court erred in entering its conclusion of law that no violation of the Sherman Act has been shown by plaintiff.

The district court should have found the issues in favor of plaintiff and this cause will be remanded so that such a finding may be entered, together with judgment accordingly.

■ 2. Defendant relies upon the district court's finding 13, which reads:

Plaintiff was not damaged as a result of defendant's refusal to sell watch bands to plaintiff subsequent to August 2, 1956.

Defendant asserts that the damages were so speculative in nature that it was impossible for the court to conclude that plaintiff had been damaged by any action taken by defendant.

However, we find that virtually uncontradicted evidence shows the following facts:

In the fall of 1954, defendant induced plaintiff to take over the Gemex inventory of a wholesaler who was going out of business and predicted that plaintiff's Gemex annual sales would be as much as $250,000. Plaintiff took on the line and commenced active promotion and sale, putting the line in its catalog which was distributed to thousands of retailers in the United States. Complete sample lines of Gemex brands were distributed by 16 salesmen to the retail trade throughout the middle west. The Marshall Field account was assigned specifically to one salesman and, as a result, that account on August 2, 1956 was about one-third of the total volume of plaintiff's Gemex sales. When defendant withdrew its line, plaintiff's Field account dropped from $25,435.60 in the fiscal year ending January 31, 1956, to $1940.87, in the fiscal year next succeeding August 2, 1956. As a result of the cutoff, plaintiff lost its Christmas last-half business, and its profit on Gemex sales, instead of being an expected $6655 for the fiscal year ending January 31, 1957 (up from $4627.76 the year before),

5. 28 U.S.C.A. rule 52(a).

was only $1263.94, or a loss in the fiscal year during which the cutoff occurred of $4391.06.

In the light of 43 years' experience with promoting similar lines of merchandise, plaintiff, after promoting the Gemex watch bands during the first full fiscal year ending January 31, 1956, could reasonably expect a 50% increase in profits for the next year ending January 31, 1957, a 33% increase the following year, a 25% increase the next year and a 15% increase in each of the two succeeding years. Also sustained were losses ranging from out-of-pocket cash expended to losses in closing out the merchandise defendant had first agreed, and then later refused, to take back. These losses totaled $56,007.95. In addition, $780 was a salary outlay for promotion of defendant's line at Field's, the benefit of which was lost when the cutoff by defendant halted further sales of its merchandise there. Plaintiff concedes that about two-fifths of this item might be fairly deducted because of the sales made during the two years of this promotion activity before the date of the cutoff.

Total losses to plaintiff, thus shown, amount to $56,475.95.

We do not consider that the proof of damages offered by plaintiff was speculative in nature and that it is impossible to contend that plaintiff has been damaged by the action taken by defendant, as the latter contends. Rather, we think, that there was no speculation as to the fact of actual damage and that plaintiff's business was seriously curtailed by the cutoff by defendant. It is not the law that the defendant who caused the damage can be permitted to escape liability because it is difficult for plaintiff to express in terms of dollars the damages it has suffered. William H. Rankin Co. v. Associated Bill Posters, 2 Cir., 42 F.2d 152, at page 155,[6] where the court said:

" * * * This evidence, while purely an estimate and introduced as such, was proof of a kind as definite and certain as the subject-matter admitted. It had to do with what was never actually earned because of the defendants' wrongdoing. The witness testified from his knowledge of the business history, made his calculations upon what appears to be a reasonable basis, and the defendants had ample opportunity by cross-examination or the offer of their own evidence on the subject to discredit him and show any fallacy in his reasoning or testimony. * * * "

The district court was led into error in finding as a fact and concluding as a matter of law that plaintiff was not damaged as a result of defendant's conduct. Damage was proved. Finding 13 is clearly erroneous.

While the evidence now in the record might be sufficient to justify a direction to the district court to compute therefrom plaintiff's actual damages sustained and make an assessment accordingly, we feel that the ends of justice would be better served if this cause be remanded for the purpose of considering the evidence already in the record on the subject of plaintiff's damages, as well as any proper evidence to be offered by defendant, and rebuttal evidence of plaintiff, on subject of plaintiff's damages, and fixing the proper amount of said damages. Such proceedings we now direct.

3. The judgment of the district court is therefore reversed and this cause is remanded to that court with instructions to (1) find the issues in favor of plaintiff and against defendant, (2) assess plaintiff's damages in the manner and in accordance with the views herein expressed, and (3) enter judgment that plaintiff recover threefold the said damages assessed, and costs of suit, including a reasonable attorney's fee, which the district court shall fix. 15 U.S.C.A. § 15.

Judgment reversed and cause remanded with directions.

6. Certiorari denied, 282 U.S. 864, 51 S.Ct. 37, 75 L.Ed. 765.